## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Case No.: _____

| | |
|---|---|
| Michelle Kealy *f/k/a* Michelle Mamula, on behalf of herself and all other similarly situated,<br>          Plaintiffs,<br><br>     vs.<br><br>Wings Financial Credit Union, Roquemore Holdings LLC *d/b/a* Roquemore & Roquemore, John Doe Repossession Companies 1- 10,<br><br>          Defendants. | **CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.     Plaintiff Michelle Kealy *f/k/a* Michelle Mamula brings this consumer class action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"); Article 9 of the Minnesota Uniform Commercial Code (UCC), Minn. Stat. §§ 336.9-101, *et. seq.*; and Minnesota Common Law.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C § 1692k and 28 U.S.C. §§ 1331 and 1367.  Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because: Plaintiff resides in this Judicial District; Defendants transact business in this Judicial District; Defendants Wings Financial Credit Union and John Doe Repossession Companies 1 - 10 are located in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

3.      Plaintiff Michelle Kealy *f/k/a* Michelle Mamula (hereinafter "Michelle") is a natural person, and citizen of the State of Minnesota.

4.      Defendant Wings Financial Credit Union (hereinafter "Wings") is a Minnesota credit union organized under Minn. Stat. §§ 52.01, *et. seq.* with its principal place of business located at 14985 Glazier Avenue, Apple Valley, MN 55124.

5.      Defendant Roquemore Holdings LLC *d/b/a* Roquemore & Roquemore (hereinafter "Roquemore") is a Delaware limited liability company with its principal place of business located 310 E I-30, Ste. 200, Garland, Texas 75043.   Defendant Roquemore also registers its place of business with the Texas Secretary of State at 329 Oaks Trail, #212, Garland, Texas, 75043.  Corporation Service Company is the registered agent authorized to accept service on behalf of Defendant Roquemore at 211 E. 7th Street, Suite 620, Austin, Texas, 78701.

**DEBT COLLECTOR DEFENDANTS**

6.      Defendant Roquemore regularly uses the mail, roads, and telephone in a business, the principal purpose of which is the enforcement of security interests and/or the collection of debts.

7.      Defendant Roquemore regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

2

8. The debts that Defendant Roquemore attempts to collect are obligations and/or alleged obligations of consumers to pay money arising out of transactions for personal, family, or household purposes.

9. Defendant Roquemore regularly collects consumer debts as an agent of secured parties and on behalf of such secured parties by making debt collection phone calls to consumers and demanding the payment of money allegedly owed to such secured parties.

10. According to Defendant Roquemore's website:

   a. Roquemore consistently meets its clients' "collection needs". *See Why Roquemore: Performance Promise* (Mar. 2, 2018, 2:20 p.m.), http://www.roquemore.com/performance-promise.html;

   b. Roquemore's "collection performance" is "higher than any other company." *See Why Roquemore: Innovation* (Mar. 2, 2018, 2:23 p.m.), http://www.roquemore.com/innovation.html;

   c. Roquemore's "single system solution" is designed to obtain "the highest collection rate in the nation." *Id*; and

   d. Roquemore has strict professional standards for its "collection efforts". *See Why Roquemore: Consistency* (Mar. 2, 2018, 2:27 p.m.), http://www.roquemore.com/consistency.html.

11. Federal court records indicate that Defendant Roquemore has been sued multiple times under the FDCPA as a debt collector in U.S. District Courts across the country. *See PACER Case Locator* (Mar. 4, 2018 12:24 p.m.), https://pcl.uscourts.gov/search (search term "Roquemore").

12. According to Defendant Roquemore's website: (a) Roquemore has provided repossession services to financial institutions for the past 30 years; (b)

3

Roquemore has the fastest and highest rate of asset recovery in the industry; (c) Roquemore repossesses over $3.4 Million in assets every week; and (d) Roquemore carries $2,000,000 in repossession insurance coverage. *See Complete Sales Kit* (Mar. 4, 2018), http://www.roquemore.com/assets/saleskit.pdf.

13.   Defendant Roquemore is a "debt collector" as defined in the FDCPA.  *See* 15 U.S.C. § 1692a(6).

14.   Defendant Roquemore was acting as a debt collector with respect to Plaintiff, the putative class members, and with respect to the security interests referenced in this complaint.

15.   Defendant John Doe Repossession Companies 1-10 (hereinafter "John Does 1-10") are the fictitious names of currently unidentified vehicle repossession entities who will be named and identified in Plaintiff's amended complaint after discovery has been commenced in this matter.

16.   Upon information and belief, Defendant John Does 1-10 regularly use the mail and telephone in a business, the principal purpose of which is the enforcement of security interests.

17.   Upon information and belief, Defendant John Does 1-10 are "debt collectors" as defined in the FDCPA.  *See* 15 U.S.C. § 1692a(6).

18.   Defendant John Does 1-10 were acting as debt collectors with respect to Plaintiff, the putative class members, and with respect to the security interests referenced in this complaint.

4

## FACTUAL ALLEGATIONS
### (The Experience of The Representative Plaintiff)

**THE MINNESOTA SECURITY AGREEMENT**

19.     Sometime between March 28, 2015 to March 31, 2015, Plaintiff purchased a 2011 Ford Fusion (hereinafter "Vehicle") from Cornerstone Auto Resource in Plymouth, Minnesota.

20.     The Vehicle is a "consumer good" under Minn. Stat. § 336.9-102(a)(23) because Plaintiff used and bought the Vehicle for personal, family, or household purposes.

21.     In connection with purchasing the Vehicle, Plaintiff executed a "Retail Installment Contract and Security Agreement" and a "Retail Installment Sale Contract Simple Finance Charge" (collectively the "Agreement").

22.     The Agreement was contemporaneously assigned to Defendant Wings.

23.     Under the terms of the Agreement: (a) Plaintiff obtained a loan from Defendant Wings to finance the purchase of the Vehicle; (b) Plaintiff granted Defendant Wings a security interest in the Vehicle to secure repayment of the loan Defendant Wings issued to Plaintiff; (c) Plaintiff was required to make 60 regular monthly installment payments in the amount of $330.41; (d) the principal amount of the obligation under the Agreement is $18,388.00; and (e) the credit service charge under the Agreement is $1,436.60.

24.     The Agreement is a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provides for a security interest to Defendant Wings.  Therefore, Defendant Wings is a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

25.     Plaintiff's obligations under the Agreement were incurred for personal, family or household purposes.  Therefore: (a) Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA; (b) Plaintiff is "consumer debtor" as that term is defined by Minn. Stat. § 336.9-102(a)(22); (c) the Agreement is a "consumer goods transaction" under Minn. Stat. § 336.9-102(a)(24); and (d) Plaintiff's obligation under the Agreement is a "debt" as defined by 15 U.S.C. § 1692a(5).

## MINNESOTA LAW - THE "*COBB*" NOTICE

26.     Under Minnesota law, when a creditor and/or secured party has repeatedly accepted late and partial payments from the debtor over the course of a loan, the creditor must notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully enforce its contract remedies for late payments.  *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 236-37 (Minn. 1980).

27.     The notice which a secured party is required to send to a consumer is referred to as a "*Cobb*" notice.

28.     The secured party must notify the debtor that "*strict compliance with the time for payment* will be required *in the future* or else the *contract remedies* may be invoked." *See Cobb*, 295 N.W.2d at 236 (citing cases) (emphasis added).

6

29.     The Minnesota Supreme Court stated that:

> The basis for *imposing this duty* on the secured party is that the secured party is *estopped from asserting his contract rights* because his conduct had *induced the justified reliance of the debtor in believing that late payments were acceptable*.    The acts which induced reliance are the *repeated acceptances of late payments* and the occasional late charges assessed. The reliance is evidenced by the *continued pattern of irregular and late payments*.

*See Cobb*, 295 N.W.2d at 236 (emphasis added).

30.     In addition to the notification of "strict compliance", the *Cobb* notice must include: (a) the amount past due; (b) the deadline to pay the due balance; and (c) the consequences for failure to comply.  *See Akerlund v. TCF Nat'l Bank of Minnesota*, No. 0:99-cv-01537(MJD/JGL), 2001 WL 1631440, at *5 (D. Minn. 2001) (citations omitted).

31.     Where a creditor has repeatedly accepted late and partial payments from the debtor over the course of a loan and has failed to send the requisite *Cobb* notice, acceleration and/or repossession is wrongful as a matter of law.   *See Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1024 (D. Minn. 2011).

## CONTINUOUS ACCEPTANCE OF LATE PAYMENTS

32.     As early as April 2015, Plaintiff began to repeatedly fall behind on her monthly payments under the Agreement.

33.     Throughout the course of the Agreement Plaintiff made numerous, late, partial, or irregular payments (collectively "Late Payments") to Defendant Wings, which were always accepted by Defendant Wings.

34.     Prior to February 2017, Defendant Wings never rejected any Late Payments from Plaintiff.

35.     Throughout the course of the Agreement, Defendant Wings sent Plaintiff regular late notices, which did not contain the requisite strict compliance language and/or *Cobb* notice language (collectively "Late Notices").

36.     On or around December 29, 2016, Plaintiff made a Late Payment to Defendant Wings in the amount of $346.93.

37.     Defendant Wings accepted the December 29, 2016 Late Payment and did not return the December 29, 2016 Late Payment

38.     Defendant Wings did not mention anything about repossession, acceleration, additional payments, strict compliance with the contract terms, and/or past due amounts.

39.     After Defendant Wings accepted Plaintiff's Late Payment on or around December 29, 2016, it failed to send Plaintiff a *Cobb* notice

40.     After Defendant Wings accepted Plaintiff's Late Payment on or around December 29, 2016, it failed to send Plaintiff any other notice requiring strict compliance with the original terms of the Agreement.

41.     Plaintiff never received a *Cobb* notice or any other notice requiring strict compliance with the original terms of the Agreement after December 29, 2016.

42.     At all relevant times, Defendant Wings allowed Plaintiff to fall behind on her monthly payments and remain behind without requiring strict compliance with the terms of the Agreement.

**DEFENDANT WINGS IS FULLY COGNIZANT OF ITS OBLGIATIONS UNDER** *COBB***.**

43.     On February 12, 2016, Defendant Wings sent a default notice (hereinafter "Default Notice") to Plaintiff and her mother (*i.e., the co-signor on the Vehicle*). The Default Notice that was different from the other Late Notices. *Attached hereto as Exhibit 1 is a true and correct copy of the Default Notice*.

44.     The Default Notice stated, in relevant part, the following:

> All **delinquent payments** must be in our office not later than the close of business on 02/26/2016. If you do not pay the **delinquent amount** of $677.34, which includes unpaid late fees in the amount of $16.52 plus any additional payments and late fees that may come due, the Credit Union may repossess the collateral, bring legal action on the claim, or purse any other legal remedies provided by applicable law.

*See* attached Exhibit 1 (emphasis added).

45.     The Default Notice objectively failed to inform Plaintiff that "*strict compliance*" with the time for payment will be required "*in the future*" or else the "*contract remedies*" may be invoked. *See Cobb*, 295 N.W.2d at 236-37.

46.     Defendant Wings is fully cognizant of the *Cobb* notice requirements and its duty to send a *Cobb* notice in situations analogous to Plaintiff's.

47.     Irrespective of whether the Default Notice satisfied the *Cobb* requirements, Plaintiff made several Late Payments subsequent to the Default Notice, which were repeatedly accepted by Defendant Wings.

48.     Plaintiff did **not** pay the delinquent amount by February 26, 2016.

49.     Between March 1, 2016 through December 29, 2016, Plaintiff continued to make Late Payments which were repeatedly accepted by Defendant Wings and never rejected.

50.     Defendant Wings continued to send Plaintiff regular Late Notices, which did **not** include the requisite *Cobb* notice.

51.     Defendant Wings was required to send Plaintiff a *Cobb* notice after the acceptance of every single Late Payment.  *See Cobb*, 295 N.W.2d at 237 ("if the creditor sends a letter to preserve its rights and then once again accepts late payments, another notice would be required."); *see also Steichen v. First Bank Grand*, 372 N.W.2d 768, 771-72 (Minn. Ct. App. 1985); *Buzzell*, 802 F. Supp. 2d at 1021.

52.     Defendant Wings failed to send Plaintiff a *Cobb* notice after it had accepted Plaintiff's Late Payment on or around December 29, 2016.

**DEFENDANT WINGS' UNLAWFUL ACCELERATION**

53.     On or around February 8, 2017, without any notice or warning, Defendant Wings sent a letter to Plaintiff stating that Defendant Wings was "exercising its right to accelerate the full balance due under the loan obligation." (hereinafter the "Acceleration

Letter"). *Attached hereto as Exhibit 2 is a true and correct copy of the Acceleration Letter.*

54.     The Acceleration Letter informed Plaintiff that she needed to pay $12,567.33 by February 22, 2017.

55.     Without any notice or warning, Defendant Wings changed its course of performance (*i.e., the repeated acceptance of Late Payments*) and demanded that Plaintiff pay the entire balance owed under the Agreement.

56.     Plaintiff was **shocked and surprised** upon receiving Defendant Wings' Acceleration Letter because Defendant Wings had **always** accepted Late Payments from Plaintiff.

57.     Since the beginning of the Agreement, almost every payment – **if not all payments** – from Plaintiff had been paid late, all of which were accepted by Defendant Wings.

58.     The very purpose of the *Cobb* notice is so that consumers such as Plaintiff are "*protected from surprise*" from a creditor's harsh contract remedies "*by fore-warning that late payments would no longer be acceptable.*" *See Cobb*, 295 N.W.2d at 237 (emphasis added).

59.     On February 8, 2017, Defendant Wings knew that it had: (a) repeatedly accepted Late Payments from Plaintiff; (b) not sent Plaintiff a *Cobb* notice after accepting the December 2016 Late Payment; and (c) knew that it was required to send Plaintiff a *Cobb* notice prior to enforcing harsh contract remedies.

11

60.     Accelerating the entire loan balance without notice after continuous acceptance of late payments is precisely what the rule in *Cobb* seeks to avoid.  Therefore, Defendant Wings illegally and wrongfully accelerated Plaintiff's loan balance.

## MISREPRESENTATIONS, THREATS AND HARASSMENT

61.     In May 2017, Defendant Roquemore began placing continuous and repeated debt collection phone calls to Plaintiff in connection with the repossession of Plaintiff's Vehicle and the collection of the debt associated with the Vehicle.

62.     During the debt collection calls, Defendant Roquemore falsely threatened or implied that: (a) criminal charges were pending; (b) Plaintiff would be arrested at her place of employment; (c) Plaintiff had already been sued; (d) Plaintiff would be served with legal papers at her place of employment; (e) it was a law firm; (f) non-payment of the debt would result in arrest or imprisonment; and (g) Plaintiff committed a crime.

63.     Defendant Roquemore deceptively attempted to scare and induce Plaintiff to pay the debt, communicate with Defendants, and/or return the Vehicle, where Plaintiff would otherwise not have done so and when no payment obligation existed.

64.     Defendant Roquemore not only failed to inform Plaintiff it was a debt collector, but specifically informed Plaintiff that it was **not** a debt collector.

65.     During the debt collection telephone calls, Defendant Roquemore used language the natural consequence of which was to abuse Plaintiff.

66.     Defendant Roquemore also placed debt collection phone calls to Plaintiff's boyfriend, Daniel Hansen (hereinafter "Hansen") in connection with the repossession of Plaintiff's Vehicle and the collection of the alleged debt associated with the Vehicle.

67.     Defendant Roquemore communicated Plaintiff's debt to Hansen and attempted to collect the debt through Hansen

68.     When certain calls were terminated, Defendant Roquemore would immediately call right back, call the other Plaintiff's mother, and/or call Hansen.

69.     In addition to telephone conversations, Defendant Roquemore left several harassing and threatening voicemail messages for Plaintiff and Hansen.

70.     Sometime on or after May 4, 2017, Defendant Roquemore called Hansen and left the following voicemail:

> Hey Dan, Olin Mills calling back. I was just speaking with Michelle on this line and she hung up on me. **That's. . .that's only going to make things worse.  Dan please let her know that is only going to make things worse.  Um. . .something like this will never just go away**. So, by her hanging up, not returning the call, playing games like this is not going to make this go away.  **This will never go away**. Um. . .so please have her give me a call back. We have to deal with it one way or the other. I mean there is a solution for everything and the way she is handling this is not the solution. So, again Olin Mills with the **firm** Roquemore and Roquemore. My call back number is 844-259-9271 or just have her to call me at the number that is in the phone. Thank you and have a great day.

71.     Defendant Roquemore's debt collection representative laughed when he said, "she hung up on me".

72.     Defendant Roquemore's debt collection representative raised his voice, tone, and inflection when he stated, "This will never go away".

13

73.     Although the voicemail was left on a Hansen's phone, Defendant Roquemore explicitly told Hansen to share the information with Plaintiff.

74.     The same debt collection representative for Defendant Roquemore left voicemails for Plaintiff.

75.     On or after May 5, 2017, Defendant Roquemore left the following voicemail for Plaintiff:

> Michelle Kealy, calling again to inform you ma'am that you have had more than enough time to contact the **firm** handling **your claim** to discuss this matter. Um. . . at this point you have chosen not to, which is perfectly fine because **through further investigation** we now have a **verified address for your residence** and **your place of employment** to **present you with your formal claim**. Now I already explained yesterday **it does look like that you may have a claim that has been brought against you**. So now you only have until we reach you personally to discuss this matter with the **firm**. Again, they can be reached at 866-337-8105. Claim Number 2017-38077. **Michelle Kealy this will be your final notification**.

76.     Defendant Roquemore's tone, inflection, and voice was very loud and fast.

77.     Defendant Roquemore's debt collection representative yelled at Plaintiff when he stated, "This will be your final notification".

78.     On or after May 5, 2017, Defendant Roquemore left another voicemail for Plaintiff stating, in part the following:

> . . .just because you ignored the call and don't call back is not going to make this go away Michelle. This will never go away. . . . My name is Olin Mills and I am with firm Roquemore and Roquemore. **I mean you can't continue just to do this Michelle for the rest of your life.  It just doesn't work like that. Again, this will never go away**.

79.     Defendant Roquemore's debt collection representative changed his voice, tone, and inflection when he stated "This will never go away" at the end of the call.

80.     During all telephone calls, Defendant Roquemore's tone, inflection, and voice was threatening, disrespectful, harassing, abusive, argumentative, aggressive, annoying, dismissive, rude, oppressive, and belittling.

81.     Defendant Roquemore intentionally and objectively deceived Plaintiff, intentionally and objectively misled Plaintiff, and intentionally and objectively made material misrepresentations to Plaintiff concerning the debt.

82.     Given the amount, frequency, content, and context of the phone calls, Defendant Roquemore's debt collection calls were made with the intent to annoy, abuse, or harass Plaintiff and Hansen.

83.     Plaintiff and Hansen felt harassed, anxious, nervous, humiliated, angry, embarrassed, annoyed, scared and abused by Defendants' debt collection efforts.

84.     Plaintiff and Hansen were actually deceived, misled, and duped as result of Defendant Roquemore's misrepresentations.

85.     Defendants did not pursue any of the threats referenced in paragraphs 62-79 and Defendants had no intention of doing so.

86.     At the time of the debt collection calls, Defendant Wings had not hired an attorney, let alone commenced any civil action against Plaintiff.

87.     Defendant engaged in extremely unfair and unconscionable conduct in its attempts to collect the alleged debt from Plaintiff by making false threats and implications to Plaintiff as referenced in paragraphs 62-79.

15

88.     Most importantly, Defendants could not legally pursue any of the threats referenced in paragraph 62-79 because: Plaintiff had not been sued, Plaintiff did not commit a crime, and Defendants wrongfully accelerated the loan balance.

89.     Defendant Roquemore's phone conversations and voicemails were "communications" as defined by 15 U.S.C. § 1692a(2) because Defendant Roquemore conveyed information regarding the debt and identified Plaintiff by name.

90.     At all relevant times, Defendant Roquemore was acting as an agent of Defendant Wings and on behalf of Defendant Wings

91.     At all relevant times, Defendant Roquemore represented to Plaintiff and Hansen that it was acting on behalf of Defendant Wings.

92.     Repossession entities that collect debts while acting as an agent of a secured party are debt collectors under the FDCPA.  *See Vonasek v. Bank of the West*, No. 0:16-cv-00342 (PJS/JSM), 2016 WL 10321581, at *4 (D. Minn. Nov. 10, 2016) (citing *Nadalin v. Automobile Recovery Bureau, Inc.*, 169 F.3d 1084 (7th Cir. 1999)); *see also See Friend v. Fryberger, Buchanan, Smith & Frederick, P.A.*, No. 0:11-cv-01584 (PJS/LIB), 2012 WL 503796, at *5 (D. Minn. Feb. 14, 2012); *Thompson v. Nat'l Credit Adjusters, LLC*, No. 0:10-cv-02307 (SRN/FLN), 2012 WL 5372577, at *5 (D. Minn. Oct. 31, 2012) (citing *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142 (9th Cir. 1998)).

93.     Defendant Roquemore has violated and caused an invasion of Plaintiff's privacy.

16

94.     Defendant Roquemore caused an intrusion upon Plaintiff's privacy and seclusion.

95.     "*Abusive debt collection practices* contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and *to invasions of individual privacy.*" *See* 15 U.S.C. § 1692(a) (emphasis added).

96.     Under the Gramm-Leach Bliley Act, financial institutions, which includes debt collectors, have "*an affirmative and continuing obligation to respect the privacy of its customers* and to protect the security and confidentiality of those customers' nonpublic personal information." *See* 15 U.S.C. § 6801(a) (emphasis added)

97.     Defendant Roquemore has violated and caused an invasion of Plaintiff's privacy.

98.     Defendant Roquemore caused an intrusion upon Plaintiff's privacy and seclusion.

99.     Defendant Roquemore's debt collection efforts caused Plaintiff emotional distress, stress, aggravation, anger, anxiety, nuisance, fear, humiliation, inconvenience, embarrassment and annoyance.

**DEFENDANTS' UNLAWFUL REPOSSESSION**

100.    After February 2017, Plaintiff attempted on several occasions to make payments to Defendant Wings. However, Defendant Wings refused to accept payments from Plaintiff after February 2017.

101.    Sometime prior to May 1, 2017, Defendant Wings hired Defendant Roquemore to perform debt collection services on its behalf and to acquire Plaintiff's Vehicle through self-help repossession.

102.    Thereafter, Defendant Roquemore hired Defendant John Does 1-10 to perform the actual self-help repossession on behalf of either Defendant Roquemore or Defendant Wings; or both Defendants Roquemore and Wings.

103.    On or around May 31, 2017, Defendant John Does 1-10, by and through one of its repossession agents, located Plaintiff's Vehicle and conducted a self-help repossession of Plaintiff's Vehicle on behalf of either Defendant Roquemore or Defendant Wings; or both Defendants Roquemore and Wings.

104.    On or around May 31, 2017, Defendant John Does 1-10, by and through one of its repossession agents, hooked up Plaintiff's Vehicle to a tow truck and repossessed Plaintiff's Vehicle.

105.    At all relevant times, Defendants refused to return the Vehicle.

106.    On or around August 29, 2017, Defendant Wings sold the Vehicle and retained the proceeds.

107.    As a result of Defendants' unlawful and wrongful collection efforts, Plaintiff has suffered both tangible and intangible injuries.  Specifically, Plaintiff has suffered monetary damages and incurred out of pocket costs as result of Defendants' wrongful collection efforts.

108.    All of Plaintiff's above-referenced injuries – both tangible and intangible –

are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

## CLASS ACTION ALLEGATIONS

109.   Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

110.   Pursuant to Fed. R. Civ. P. 23(a) and (b), Plaintiff seeks to certify four classes.

111.   The first class that Plaintiff seeks to certify is defined as (hereinafter the "*Cobb* Class"):

> *All Minnesota consumers who, within four (4) years of the filing of this Complaint, made at least two late or partial payments on their automobile(s) that were accepted by Defendant Wings and who, thereafter, were not sent a strict compliance/Cobb notice prior to Defendant Wings' repossession.*

112.   The *Cobb* Class shall be subject to the following exclusions, who are not members of the *Cobb* Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiff and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

113.   The second class that Plaintiff seeks to certify is defined as (hereinafter the "Acceleration Class"):

> *All Minnesota consumers who, within four (4) years of the filing of this Complaint, made at least two late or partial payments on their automobile(s) that were accepted by Defendant Wings and who, thereafter, were not sent a strict compliance/Cobb notice prior to Defendant Wings accelerating the full balance of the loan.*

114.   The Acceleration Class shall be subject to the following exclusions, who are not members of the Acceleration Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiff and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

115.   The Third class that Plaintiff seeks to certify is defined as (hereinafter the "FDCPA Class"):

*All Minnesota consumers who, within one (1) year of the filing of this Complaint, made at least two late or partial payments on their automobile(s) that were accepted by Defendant Wings and who, thereafter, were not sent a strict compliance/Cobb notice prior to Defendant Wings' repossession.*

116.   The FDCPA Class shall be subject to the following exclusions, who are not members of the FDCPA Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiff and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

117.   The Fourth class that Plaintiff seeks to certify is defined as (hereinafter the "Conversion Class"):

*All Minnesota consumers who, within four (4) years of the filing of this Complaint, made at least two late or partial payments on their automobile(s) that were accepted by Defendant Wings and who, thereafter, were not sent a strict compliance/Cobb notice prior to Defendant Wings' repossession.*

118.   The Conversion Class shall be subject to the following exclusions, who are not members of the Conversion Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiff and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

119.   During the class time-period alleged herein, Defendants Roquemore and John Does 1-10 did not have a policy and procedure in place to verify that before it engaged in repossession activity that co-Defendant Wings had sent the proper legal notice(s) to the Plaintiff and the putative class.

120.   As a result of Defendant Wings' failure to comply with Minnesota law, Defendants Roquemore and John Does 1-10 did not have a present right to possess the property belonging to Plaintiff and the putative class members in violation of 15 U.S.C. § 1692f(6).

121.   This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation.   The Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements under Fed. R. Civ. P. 23(a) and (b) for class certification.

**Rule 23(a)(1) - Numerosity**

122.   According to Defendant Wings' website, Defendant Wings has over 210,000 members. *See About Wings*, https://www.wingsfinancial.com/about-wings (February 3, 2018, 4:01 p.m.).   Defendant Wings' website further states "While members often remark that Wings has a small community feel, we have the size and scale to offer superior pricing and service. At $4.3 billion in assets, Wings is Minnesota's largest credit union and ranks among the nation's top 30 credit unions."  *Id.*

123.    Defendant Wings provides automobile financing services to Minnesota consumers who, at one time or another, fall behind on their monthly automobile loan payments and make late or partial payments to Defendant Wings.

124.    Upon information and belief, Defendant Wings repeatedly accepted late, partial, and irregular payments from Minnesota consumers.

125.    The late, partial, and irregular payments were repeatedly accepted by Defendant Wings and Minnesota consumers never received a legally sufficient notice prior to the repossessions described herein and/or the acceleration of the full balance of their loans.

126.    It is plausible that Defendant Wings accepted numerous late, partial, and irregular payments from consumers and then accelerated the full balance of their loans without sending a sufficient *Cobb* notice in advance of its acceleration efforts on such a large number of consumers such that joinder of all in this lawsuit would be impracticable.

127.    It is plausible that Defendant Wings accepted numerous late, partial, and irregular payments from consumers and then repossessed, or attempted to repossess, said consumers' automobiles unlawfully without sending a sufficient *Cobb* notice in advance of its repossession efforts on such a large number of consumers such that joinder of all in this lawsuit would be impracticable.

128.    The exact number of the class members is unknown at this time, but upon information and reasonable belief, the estimated number is in excess of 40 consumers.

129.    The exact number of class members as well as the identities of all class members are readily ascertainable through appropriate discovery, including but not limited to the business records of Defendants and from the online accounts from Defendants' website.

**Rule 23(a)(2) - Commonality**

130.    All members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class had their rights violated in the same manner by the same actions of Defendants.  There are common questions of law and fact that exist as to the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class.

131.    These common legal and factual questions include:

   a. Whether Defendant Wings conducted a self-help repossession of the class members' automobiles without a present right to possession of the class members' automobiles;

   b. Whether Defendant Wings accelerated the full balance of class members' loans without sending the class members the requisite *Cobb notice* after repeatedly accepting Late Payments from the class members; and

   c. Whether Defendants Roquemore and John Does 1-10 used unfair or unconscionable means enforce a security interest against the class members by taking or threatening to take certain nonjudicial action to effect dispossession of the class members' property when Defendants Roquemore and John Does 1-10 had no present right to possession of the property which they claimed as collateral through an enforceable security interest.

132.    The common evidence that will drive resolution of the claims for the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class is a list of Minnesota consumers: (a) who have made late, partial, and irregular payments to

Defendant Wings over the course of their automobile loan; (b) which were accepted by Defendant Wings; (c) who never received a legally sufficient *Cobb* notice from Defendant Wings after making Late Payments; and (d) who subsequently experienced a wrongful acceleration of their loan balance, wrongful repossession, or attempted wrongful repossession of their automobile.

133.    These common questions of law and fact predominate over questions that may affect individual class members.   The answer to these common questions will advance the adjudication or resolution of the litigation as to all class members.

**Rule 23(a)(3) - Typicality**

134.    Plaintiff's claims are typical of the claims of all the other members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class. Plaintiff has the same claims to statutory relief and has suffered the same injuries as all other members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class.

135.    The claims of Plaintiff and the claims of all class members originate from the same conduct, practice, and procedure on the part of Defendants. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

136.    Any defenses that Defendants may have to liability or quantum of damages with respect to Plaintiff's claims would be generally applicable to all members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class.

**Rule 23(a)(4) - Adequacy**

137.   Plaintiff brings this lawsuit after an extensive investigation of Defendants' alleged misconduct.

138.   Plaintiff brings this lawsuit with the intention to stop Defendants' unlawful practices and to recover statutory penalties for all consumers affected.

139.   Plaintiff will fairly and adequately protect the interests of all members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class. Plaintiff has no interest adverse and/or in conflict to the interests of the members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class.

140.   Plaintiff's counsel, the Consumer Justice Center, P.A. and Adam R. Strauss, Esq. at Tarshish Cody, PLC, practice exclusively in consumer rights law.

141.   Plaintiff's counsel, the Consumer Justice Center, P.A., has been certified as class counsel in dozens of class actions enforcing consumer rights laws in District Courts around the country.

142.   Plaintiff and Plaintiff's counsel will continue to vigorously pursue relief for the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class. Neither Plaintiff nor her counsel have any interest which might cause them to not vigorously pursue the instant class action lawsuit.  Plaintiff and Plaintiff's counsel are committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class.

**Rule 23(b)(1) & (2) – Risk of Inconsistent or Dispositive Adjudications**

143.   Certification of a class under Fed. R. Civ. P. 23(b)(1)(A) is appropriate because the prosecution of separate actions for individual class members creates a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendants engaged in automobile lending and/or the enforcement of security interests.

144.   Certification of a class under Fed. R. Civ. P. 23(b)(1)(B) is appropriate because the prosecution of separate actions by individual class members of the classes would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

145.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendants have acted or refused to act on grounds generally applicable to the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class making final declaratory or injunctive relief appropriate for the entire class.

**Rule 23(b)(3) – Predominance/Superiority**

146.   A class action under Fed. R. Civ. P. 23(b)(3) is appropriate because there are numerous questions of law and fact common to Plaintiff, the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class that substantially predominate over questions that may affect individual class members.

147.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversies raised in this Complaint because individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake.   Thus, members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class have little interest in prosecuting or controlling the litigation given the small amounts at stake compared to the cost, risk, delay, and uncertainty of recovery after prosecuting this lawsuit.

148.    The concentration of litigation of these claims in one forum will permit a large number of similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense that individual actions would engender, and therefore, promote judicial economy.

149.    All members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class had their rights violated in the same manner by the same actions of Defendants.

150.    Statutory relief under the FDCPA and the Minnesota UCC follows from evidence that Defendants ***immediately*** invoked or attempted to invoke harsh contract remedies after accepting Late Payments from the class members ***as opposed to*** providing class members with the requisite *Cobb* notice required under Minnesota law – not the subjective or individual experience of any class member.

151.   Upon information and belief, few members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class are aware that Defendants' actions were unlawful.

152.   Plaintiff and Plaintiff's counsel are not aware of any other pending actions against Defendant Wings related to their regular practice of unlawful acceleration, unlawful automobile repossessions, and/or attempted repossessions.

153.   The class notice mechanism provides an opportunity for uninformed members of the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class to learn about their rights and obtain relief where they otherwise would not have.

## TRIAL BY JURY

154.   Plaintiff are entitled to and hereby demands a trial by jury.  *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CLASS ACTION CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF MINN. STAT. § 336.9-101, *et. seq.*
### UNLAWFUL ACCELERATION
### (Defendant Wings)

155.   Plaintiff restate and re-allege the preceding allegations of this Complaint.

156.   At all relevant times, Defendant Wings failed to send Plaintiff and the Acceleration class members the requisite *Cobb* notice after Defendant Wings had repeatedly accepted Late Payments from Plaintiff and the Acceleration class members. *See Cobb*, 295 N.W.2d at 236-7.

28

157.   As a result, Defendant Wings had no present legal right to accelerate the loan balances of Plaintiff or the Acceleration class members – as that right has been defined and limited by *Cobb*, 295 N.W. 2d at 237.

158.   Therefore, Defendants' conduct of accelerating the loan balances of Plaintiff and the Acceleration Class members was done without compliance with Minnesota law (i.e., in violation of Minn. Stat. § 336.9-607 *et. seq*.).  *See Cobb*, 295 N.W.2d at 236-7.

159.   As a result of Defendants' violations of Minn. Stat. § 336.9-601, et. seq. and pursuant to Minn. Stat. § 336.9-625, Plaintiff and the Acceleration class members are entitled to damages in the amount of the credit service charge under the loan agreements plus ten percent (10%) of the principal amount of the obligation under the loan agreements.

## COUNT II
## VIOLATIONS OF MINN. STAT. § 336.9-609
## UNLAWFUL REPOSSESSION
## (All Defendants)

160.   Plaintiff restate and re-allege the preceding allegations of this Complaint.

161.   At all relevant times, Defendant Wings failed to send Plaintiff and the *Cobb* class members the requisite *Cobb* notice after it had repeatedly accepted Late Payments from Plaintiff and the *Cobb* class members.  *See Cobb*, 295 N.W.2d at 236-7.

162.   As a result, Defendants had no present legal right to possess the vehicles belonging to Plaintiff or the *Cobb* class members – as that right has been defined and limited by *Cobb*, 295 N.W. 2d at 237.

29

163.    Therefore, Defendants' self-help repossession of the vehicles belonging to Plaintiff and the *Cobb* class members were conducted without compliance with Minnesota law (i.e., in violation of Minn. Stat. § 336.9-609).  *See Cobb*, 295 N.W.2d at 236-7.

164.    As a result of Defendants' violations of Minn. Stat. § 336.9-609 and pursuant to Minn. Stat. § 336.9-625, Plaintiff and the *Cobb* class members are entitled to damages in the amount of the credit service charge under the loan agreements plus ten percent (10%) of the principal amount of the obligation under the loan agreements.

### COUNT III
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### UNFAIR AND UNCONSIONABLE MEANS
### (Defendants Roquemore and John Does 1-10)

165.    Plaintiff restate and re-allege the preceding allegations of this Complaint.

166.    Defendants Roquemore and John Does 1-10 used unfair or unconscionable means to enforce a security interest against Plaintiff and the FDCPA class members by taking or threatening to take certain nonjudicial action to effect dispossession of the property belonging to Plaintiff and the FDCPA class members' when Defendants Roquemore and John Does 1-10 had no present right to possession of the property which they claimed as collateral through an enforceable security interest.

167.    Specifically, Defendants Roquemore and John Does 1-10 engaged in a self-help repossession of the vehicles belonging to Plaintiff and the FDCPA class members without the present legal right to possess and/or take the vehicles belonging to Plaintiff and the FDCPA class members.

168.   Defendants Roquemore and John Does 1-10 did not have the legal right to possess the vehicles belonging to Plaintiff or the FDCPA class members because Defendant Wings failed to send Plaintiff and the FDCPA class members the requisite *Cobb* notice after Defendant Wings had repeatedly accepted Late Payments from Plaintiff and the FDCPA class members.

169.   Defendant Roquemore's and Defendant John Does 1-10 conduct violated 15 U.S.C. §§ 1692f and 1692f(6).

170.   As a result of Defendant Roquemore's and John Does 1-10's violations of the FDCPA, Plaintiff and the FDCPA class members are entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT IV
## CONVERSION
## (All Defendants)

171.   Plaintiff restate and re-allege the preceding allegations of this Complaint.

172.   At all relevant times, Defendants never had the present right to use, take possession of, or move Plaintiff's property or the Conversion Class members' property – in this case, their automobiles.

173.   Defendants intentionally deprived Plaintiff and the Conversion Class members of the use, possession, and enjoyment of their property by unlawfully repossessing their automobiles

31

174.    Defendants intentionally interfered with the use, possession, and enjoyment of Plaintiff's property and the Conversion Class members' property, without a claim of right, by unlawfully repossessing their automobiles.

175.    Defendants converted the automobiles of Plaintiff and the Conversion Class members for their own use and benefit by taking Plaintiff's automobile without their consent.

176.    Defendants converted the automobiles of Plaintiff and the Conversion Class members for their own use and benefit by selling their vehicles and retaining the proceeds.

177.    As a direct and proximate result of Defendants' conversion, Plaintiff and the members of the Conversion Class have been deprived of the use, possession, and enjoyment of their property and damaged in an amount to be determined at trial.

**PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION**

<u>**COUNT V**</u>
<u>**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**</u>
<u>**COMMUNICATION IN CONNECTION WITH DEBT COLLECTION**</u>
**(Defendant Roquemore)**

178.    Plaintiff restate and re-allege the preceding allegations of this Complaint.

179.    Defendant Roquemore, as an agent of Defendant Wings and on behalf of Defendant Wings, communicated and/or attempted to communicate with third-parties in connection with the collection of the alleged debt by contacting Plaintiff's boyfriend.

180.    Defendant Roquemore's conduct violated 15 U.S.C. § 1692c(b).

181.    As a result of Defendant Roquemore's violations of the FDCPA, Plaintiff

are entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT VI**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**HARASSMENT OR ABUSE**
**(Defendant Roquemore)**

182.    Plaintiff restate and re-allege the preceding allegations of this Complaint.

183.    In connection with the collection of the alleged debt, Defendant Roquemore engaged in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff because: (a)  Defendant Roquemore's aforementioned language and conduct has the natural consequence to abuse Plaintiff because it causes anxiety, emotional distress, stress, aggravation, anger, nuisance, fear, confusion, inconvenience, humiliation, and embarrassment, annoyance; (b) Defendant Roquemore called continuously and repeatedly with intent to annoy, abuse, or harass Plaintiff; and (c) because Defendant Roquemore placed telephone calls without disclosing its identity to Plaintiff.

184.    Defendant Roquemore's conduct violated 15 U.S.C. §§ 1692d, 1692d(2), 1692d(5), and 1692d(6).

185.    As a result of Defendant Roquemore's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT VII
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## FALSE OR MISLEADING REPRESENTATIONS
### (Defendant Roquemore)

186.    Plaintiff restate and re-allege the preceding paragraphs of this Complaint.

187.    As described in this Complaint and described below, Defendant Roquemore used false, deceptive, and misleading means in connection with the collection of the alleged debt.

188.    Defendant made deceptive, false, and misleading threats, representations and/or implications to Plaintiff: (a) regarding the character, amount, and legal status of the debt; (b) that Defendant Roquemore is a law firm; (c) that nonpayment of the debt will result in the seizure, garnishment, or attachment of Plaintiff's property or wages when no such action was lawful; (d) that Plaintiff has committed a crime or other conduct which would disgrace Plaintiff; (e) that Defendants had sued Plaintiff, had obtained a judgment against Plaintiff, and that Plaintiff would be served with legal papers at her place of employment; and (f) regarding its status as a debt collector.

189.    Defendant Roquemore's threated to take action that cannot legally be taken, and that Defendants did not intend to take such as the threat of criminal prosecution, imprisonment, and arrest.

190.    Defendant Roquemore wrongfully and deceptively attempting to induce Plaintiff to pay the debt and to communicate with Defendants where Plaintiff would otherwise not do so and when no payment obligation existed;

34

191.    Defendant Roquemore's conduct violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(4), 1692e(5), 1692e(7), 1692e (10), and 1692e(11).

192.    As a result of Defendant Roquemore's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

### <u>COUNT VIII</u>
### <u>VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>
### <u>UNFAIR PRACTICES</u>
### (Defendant Roquemore)

193.    Plaintiff restate and re-allege the preceding paragraphs of this Complaint.

194.    Defendant Roquemore used unfair or unconscionable means to collect or attempt to collect the debt by:

      a. Collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the debt and that was not permitted by law;

      b. Attempting to induce Plaintiff to pay the debt and/or communicated with Defendants, where Plaintiff would otherwise not do so and when no payment obligation existed; and

      c. Relentlessly attempting to collect the debt by making continuous, harassing, abusive, threatening, and deceptive debt collection calls; calling third parties regarding the debt; and making egregious threats to Plaintiff to collect the debt.

195.    Defendant Roquemore's conduct violated 15 U.S.C. §§ 1692f and 1692f(1).

196.    As a result of Defendant Roquemore's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to

$1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT IX**
**INVASION OF PRIVACY**
**(Defendant Wings and Defendant Roquemore)**

197.    Plaintiff restate and re-allege the preceding paragraphs of this Complaint.

198.    Defendants intentionally and/or negligently interfered with the solitude, seclusion, and/or private concerns or affairs of Plaintiff by:

   a. Repeatedly and unlawfully attempting to collect the debt using illegal, threatening, disrespectful, abusive, oppressive, annoying, intrusive, aggressive, deceptive, argumentative, dismissive, rude, oppressive, belittling, and harassing debt collection efforts;

   b. Contacting third-parties regarding the debt and disclosing the debt and information to third-parties; and

   c. Initiating unwanted and harassing telephone calls to Plaintiff;

199.    Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, private concerns, and private affairs.

200.    Defendants' above-described conduct resulted in multiple intrusions and invasions of Plaintiff's privacy.  The intrusions and invasions of Plaintiff's privacy occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

201.    Defendants intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting the debt, thereby invading and intruding upon Plaintiff's right to privacy.

202.   As a direct and proximate result of Defendants' invasion of privacy, Plaintiff has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Michelle Kealy *f/k/a* Michelle Mamula demands a trial by jury and pray for judgment against Defendants Wings Financial Credit Union, Roquemore Holdings LLC *d/b/a* Roquemore & Roquemore, John Doe Repossession Companies 1-10 as follows:

1. Awarding judgment against Defendants in an amount to be determined at trial;

2. Certifying the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class as described herein;

3. Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendants Roquemore and John Does 1-10;

4. Awarding the FDCPA Class members actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendants Roquemore and John Does 1-10;

5. Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

6. Awarding the *Cobb* class members actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

7. Awarding the Acceleration class members actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendant Wings;

8. Awarding Plaintiff damages against Defendants caused by Defendants' complete conversion of Plaintiff's property;

9. Awarding Conversion Class members damages against Defendants caused by Defendants' conversion of their property;

10. Awarding Plaintiff, the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class any allowable costs, litigation expenses, disbursements, and attorneys' fees; and

11. Awarding Plaintiff, the Acceleration Class, the *Cobb* Class, the FDCPA Class, and the Conversion Class such other and further relief as the Court deems proper, just and equitable.

Dated:  May 2, 2018                                **TARSHISH CODY, PLC**

                                    By:   *s/ Adam R. Strauss*
                                          Adam R. Strauss (#0390942)
                                          ars@attorneysinmn.com
                                          Benjamin W. Tarshish (#0392691)
                                          btarshish@attorneysinmn.com
                                          6337 Penn Avenue South
                                          Minneapolis, Minnesota 55423
                                          Telephone: (952) 361-5556
                                          Facsimile: (952) 361-5559

Dated:  May 2, 2018                                **CONSUMER JUSTICE CENTER, P.A.**

                                          Thomas J. Lyons, Jr. (#0249646)
                                          tommy@consumerjusticecenter.com
                                          367 Commerce Court
                                          Vadnais Heights, Minnesota 55127
                                          Telephone: (651) 770-9707
                                          Facsimile: (651) 704-0907

                                          **ATTORNEYS FOR PLAINTIFF**

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

Pursuant to 28 U.S.C. § 1746, Plaintiff Michelle Kealy *f/k/a* Michelle Mamula, verifies, certifies, and declares under penalty of perjury, as follows:

1.  I am a Plaintiff in this civil proceeding.
2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.  Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
8.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON** ____May____ ___02____ , ___2018_____
             **Month**        **Day**        **Year**

_____

Michelle Kealy *f/k/a* Michelle Mamula

39