**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Civil Case No.: 0:18-cv-01226 (JRT/LIB)**

| | |
|---|---|
| Michelle Kealy *f/k/a* Michelle Mamula, *on behalf of herself and all other similarly situated* <br><br> Plaintiffs, <br><br> vs. <br><br> Wings Financial Credit Union, Roquemore Holdings LLC *d/b/a* Roquemore & Roquemore, John Doe Repossession Companies 1- 10., <br><br> Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CLASS NOTICE, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVE** |

## INTRODUCTION

On May 2, 2018, Plaintiff Michelle Kealy brought a class action against Defendants Wings Financial Credit Union ("Wings") and Roquemore Holdings LLC ("Roquemore") (collectively "Defendants") alleging violations of the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §1692f(6)), Article 9 of the Minnesota Uniform Commercial Code ("UCC") (Minn. Stat. § 336.9-609), and Minnesota common law conversion[1]. The parties to the above-entitled action reached an arms-length agreement to settle this matter on February 13, 2019[2]. The agreement was reached

---

[1] Plaintiff also asserts an individual claim for invasion of privacy. Plaintiff only asserts FDCPA claims against Roquemore because Wings is not a "debt collector" under the FDCPA. Plaintiff has also asserted an individual FDCPA claims against Roquemore.

[2] Roquemore has only participated in this settlement by being available by phone as needed.

following good-faith negotiations between the parties and their counsel during the course of a full day mediation conducted and supervised by retired United States Magistrate Judge Arthur Boylan[3]. The private mediation was attended in-person by representatives for Wings, and counsel for Wings and Plaintiff.

Plaintiff brings the present motion to pursuant to Rule 23 of the Federal Rules of Civil Procedure, which Defendants do not oppose. Specifically, Plaintiff moves the Court for an Order to: (1) preliminarily approve the proposed settlement, including the proposed notice to the Class; (2) certify the Settlement Class; (3) appoint Plaintiff as Class Representative; and (4) to appoint Adam R. Strauss and Thomas J. Lyons Jr. as Class Counsel. For the reasons mentioned below, Plaintiff respectfully requests that the Court grant Plaintiff's unopposed motion in full.

## FACTUAL BACKGROUND

On May 2, 2018, Plaintiff commenced this action alleging that Defendants failed to comply with the FDCPA and Minnesota law by repossessing her car without providing her with a right to cure notice prior to the repossession. Specifically, Plaintiff alleges that Defendants violated the UCC and the FDCPA because: (a) Defendants unlawfully repossessed the vehicles belonging to Plaintiff and the class members without the present right to possess any such vehicles; and (b) Defendants accelerated the loan balances for Plaintiff and the class members without the present right to accelerate the loans balances.

---

[3] Magistrate Judge Boylan served seventeen (17) years as a Magistrate Judge in the District of Minnesota prior to his retirement in 2014. Judge Boylan was named Chief Magistrate Judge in 2010. Prior to the Federal bench, Judge Boylan served more than ten years as a Minnesota State District Court Judge for the Eighth Judicial District. *See Strauss Decl*, ¶ 16.

*See* (Compl. [ECF. 1] ¶¶ 156-170)[4].  In June 2018, Defendants filed separate Answers denying Plaintiff's allegations that they wrongfully repossessed the vehicles belonging to Plaintiffs and the Class members.  *See* (Wings Answer [ECF. 4] ¶¶ 102-112; Roquemore Answer [ECF. 6] ¶¶ 156-170).

After the August 13, 2018, Pretrial Conference, Plaintiff was able to confirm the practices of Wings and the allegations in the Complaint through in-depth written discovery (*including initial disclosures, interrogatories, requests for documents and requests for admissions*).  (Declaration of Adam R. Strauss, ¶ 14) ("Strauss Decl.").  Moving forward, the parties engaged in several meet and confer conferences in-person, via telephone, and through email correspondence.  (*Id*).  The meet and confer conferences focused on detailed and complete discovery, Defendants' practices, data and information relating to the putative class, damages, and settlement opportunities.  (*Id*).  Because both parties were willing to engage in open, honest, and cordial meet and confer conferences – *which, the parties did early and often* – the parties were able to expeditiously reach an amicable resolution. In addition, Wings has agreed to post-settlement confirmatory discovery.  (*Strauss Decl*, Ex. 1 at III.Q).

On February 13, 2018, the parties and their counsel participated in a full day

---

[4] A secured party may engage in self-help repossession of a vehicle without judicial process if the consumer is in default.  Minn. Stat. § 336.9-609.  However, after a creditor has accepted late payments from a consumer, the creditor must notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully enforce its contract remedies.  *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980).  The strict compliance letter referred to in *Cobb* is also known as a "*Cobb* notice".  *Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011). If a creditor fails to send a *Cobb* notice, "repossession is wrongful as a matter of law."  *Buzzell*, 802 F. Supp. 2d at 1024 (citing *Steichen v. First Bank Grand*, 372 N.W.2d 768, 771 (Minn. App. 1985).

private mediation conducted and supervised by Magistrate Judge Boylan (Ret.). Roquemore participated by phone as needed.  (*Id.* at I.C).  Ultimately, plaintiff's counsel concluded that settlement on a class-wide basis was in the best interest of the parties and putative class members.  (*Id.* at I.A-I.F; *Strauss Decl*, ¶¶ 16-23).  In particular, given plaintiff's counsels' investigation and analysis of the facts and law, and after having weighed the benefits to the putative class associated with a prompt and certain resolution of the action against the significant cost, risk and delay that continued prosecution of the action could involve, the parties concluded that settlement of the action on the terms set forth in the Settlement Agreement and Release (the "Agreement") was fair, reasonable and adequate, and that the settlement reached was in the best interest of the putative class. (*Id*).  The class is defined as: the 400 Wings customer accounts (1) who were party to vehicle retail installment contracts ("RICs") with Wings that were subject to Minnesota law; and (2) whose vehicles subject to such RICs were repossessed by or on behalf of Wings in Minnesota between May 2, 2015 through the date this Action was filed, excluding customers who are deceased or where the repossession was the result of a bankruptcy (the "Settlement Class")[5]. (*Strauss Decl*, Ex. 1 at II.A.23)

## **SETTLEMENT AGREEMENT**

Defendant Wings has agreed to pay a total sum of Four Hundred Thousand Dollars ($400,000.00), in a combination of cash and credits, to establish a settlement fund

---

[5]Attached as Exhibit 1 to the Strauss Declaration is a true and correct copy of the executed Agreement.  True and correct copies of the Exhibits to the Agreement are also attached to the Strauss Declaration.  *See* (*Strauss Decl*. Ex. 2 (*Mail Notice*); Ex. 3 (*Proposed Order for Preliminary Approval*); and Ex. 4 (*Proposed Final Approval Order and Judgment*)).

(the "Fund") that will be used to pay all settlement costs. (*Id*. at III.C.1). The Fund will be used to pay a settlement award to all class members who do not timely request exclusion from the settlement class. (*Id*). Plaintiff's counsel estimates that approximately Six Hundred Ten Dollars and Forty-One Cents ($610.41) will be distributed to each class member through a combination of cash and credits. (*Id*. at III.H.1). In addition, Plaintiff's counsel estimates that each class member whose vehicle was repossessed between May 3, 2017 through May 2, 2018 may receive approximately Fifty Dollars ($50.00) in addition to the $610.41. (*Id*). Because a deficiency balance is owed on each of the class members' accounts, a portion of the settlement award will be satisfied through credit to the account. (*Id*). After an account credit of approximately Two Hundred Fifty Dollars ($250.00) is applied to the class members' outstanding balance, the remaining portion of the settlement award will be distributed by check. (*Id*). Even further, Wings will submit requests that TransUnion, Experian and Equifax remove the tradeline relating to the vehicle that was repossessed[6]. (*Id*. at III.C.2).

A third-party settlement administrator, First Class, Inc., will be responsible for providing the notice to the class and any services related to the administration of the settlement. (*Strauss Decl*, Ex. 1 at II.A.20, III.D, III.F; and Ex. 2). First Class will distribute the cash awards to eligible class members by check, which will expire after

---

[6] To the extent there are two class members associated with a unique account (*e.g., borrower and coborrower*), only one check will be mailed per account, and the check will be issued jointly to the class members. (*Strauss Decl*, Ex. 1 at III.H.1). Likewise, only one account credit will be issued for each account. (*Id*). However, Wings will submit the tradeline deletion request for each person (*e.g., borrower and coborrower*) and each person will receive class notice. (*Id.* at III.C.2).

ninety (90) days.  (*Id.* at III.I.2).  The amounts of any checks that are returned as undeliverable or that remain uncashed more than 90 days after the date on the check will be allocated as a *cy pres* distribution.  (*Id.* at III.J.7).  Subject to court approval, the *cy pres* award will be distributed to the Federal Bar Association, Minnesota Chapter, *Pro Se* Project.  (*Id*).  No Remaining Funds shall revert to Wings or otherwise be paid to Wings. (*Id*).

In addition, subject to Court approval, the Fund will be used to pay Five Thousand Dollars ($5,000.00) to Plaintiff as an incentive award for pursing this action as the class representative on behalf of the class.  (*Id*. at III.M).  The incentive award includes Plaintiff's damages pursuant to the FDCPA and UCC, as well as a class representative incentive fee for her services in this litigation.  Plaintiff will also move the Court for an award of reasonable attorneys' fees and costs, not to exceed 33.33% of the Fund. (*Id*. at III.L).  Any such award, which Defendants reserve the right to oppose, will be paid from the Fund.  (*Id*).  Expenses of providing the class notice (*by mail with reference to a toll-free number*), administration of the settlement, and issuance of checks shall be advanced by Wings, but shall be credited against the Fund.  (*Id*. at III.H.1).  The parties have agreed that the amount requested by Plaintiff is reasonable, fair and adequate.  (*Id*. at I.A-I.F; *Strauss Decl*, ¶¶ 16-23).

Finally, Plaintiff and the class members will release all claims that arise out of or are related to the wrongful repossession of the vehicles belonging to the class members, and ultimately this lawsuit will be dismissed with prejudice. (*Strauss Decl*, Ex. 1 at III.K).  Importantly, although the relief requested in this motion and the terms of the

parties' Agreement is subject to court approval, Defendants do not oppose the relief requested in Plaintiff's motion nor the terms of the Agreement.

## I.   PLAINTIFF'S ACTION SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.

A class action serves to conserve the resources of the court and the parties by permitting an issue that may affect every class member to be litigated in an economical fashion. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). To be certified as a class action, Plaintiffs must meet all four of the requirements of Rule 23(a), and at least one of the three subsections of Rule 23(b). *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

While district courts retain broad discretion in determining whether to certify a class, *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012), the Court must conduct a "rigorous analysis" to ensure that the prerequisites of Rule 23 are satisfied. *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (citing *Falcon*, 457 U.S. at 161). "The preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013) (citation omitted). "Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

In connection with the parties Agreement, Plaintiff respectfully requests the Court

issue an Order Preliminarily Approving the settlement class, along with the proposed class notice, certifying the settlement class, certifying Plaintiff as the class representative, and certifying Plaintiff's attorneys as class counsel.

### A.  Plaintiff's Motion Satisfies the Rule 23(a) Requirements.

The four requirements of Rule 23(a) are: (1) that the class be so numerous that joinder of all of its members would be impracticable; (2) that the class members' claims give rise to common questions of law or fact; (3) that the plaintiff's claims are typical of the class members' claims; and (4) that the named plaintiff and plaintiff's counsel will fairly and adequately represent the case.  Fed. R. Civ. P. 23(a); *see also Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 183 (D. Minn. 2009).  Plaintiff's claim satisfies these requirements and therefore, the Court should grant Plaintiff's motion.

### 1.  The Numerosity Requirement is Satisfied.

A class may be certified if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity merely requires a sufficient number to render the efficiencies of class certification more judicious than individualized claims.  "In general, a putative class exceeding 40 members is sufficiently large to make joinder impracticable."  *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007) (*citing Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995)); *see also Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664 (D. Minn. 1991) (numerosity established by twenty (20) putative class members).  Here, the parties reasonably believe that the class consists of approximately four hundred (400) accounts

subject to a Minnesota RIC, easily satisfying the numerosity requirement for class certification[7].

### 2. The Commonality Requirement is Satisfied.

For commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have liberally construed commonality:

> The rule does not require that every question of law or fact be common to every member of the class, *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974); *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 31 L. Ed. 2d 588, 92 S. Ct. 1309 (1972), and may be satisfied, for example, 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.' *American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974).

*Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982); *see also Karsjens v. Jesson,* 283 F.R.D. 514, 518 (D. Minn. 2012). It is not necessary that both the legal issues and factual questions be identical amongst class members, so long as one or the other is common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Even a single common question will satisfy commonality. *See Wal-Mart Stores, Inc. v. Dukes*, 564 US 338, 359 (2011) (quoting 103 Colum. L. Rev. 149, 176 n. 110 (2003)).

Plaintiff's Complaint alleges standardized conduct by Defendant – *i.e., repossession of consumers' vehicles without providing a Cobb notice in violation of the*

---

[7] Between May 2, 2015 through May 2, 2018, the data available reflects that there were approximately 400 accounts wherein the subject vehicle was repossessed. Within the 400 accounts, there were approximately forty (40) co-borrowers. Therefore, a total of four hundred forty (440) Minnesota consumers with the inclusion of co-borrowers. (*Strauss Decl.*, Ex. 1 at II.A.24).

*UCC and FDCPA*.  (ECF. 1 ¶¶ 156-170).  Plaintiff seeks the same remedy for all class members in the form of statutory damages.  (*Id*).  There are no foreseeable legal discrepancies between Plaintiff's claims and any other class member.  The significance of any factual discrepancy – if any at all – would be *de minimis*.

The claim asserts that the failure to provide the right to cure notice violates the UCC and FDCPA.  The claim is in no way affected by individual circumstances of potential class members, rather liability is established solely by Defendants' conduct.  Accordingly, the class proposed in the Agreement satisfies the commonality requirement for class certification.

### 3.  *The Typicality Requirement is Satisfied.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).  The typicality requirement is generally met where "claims or defenses of the representative parties and the members of the class stem from a single event or are based on the same legal or remedial theory".  *See Paxton*, 688 F.2d at 561-62 (internal citations and quotations omitted).  "[I]n some circumstances, the test for typicality is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'"  *In re GenesisIntermedia Sec. Litig*., 232 F.R.D. 321, 329 (D. Minn. 2005) (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).  Small differences in facts, legal theories, and damages do not automatically render the claims of class members atypical.  *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996); *DeBoer*, 64 F.3d at 1174; *Harju v. Olson*, 709 F. Supp. 2d 699, 735 (D. Minn. 2010); *Lockwood*

*Motors*, 162 F.R.D. at 575.

There is no requirement that the class members be identically situated, so long as they have the same grievances. *Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 486 (D. Minn. 2003).  When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class members, the typicality requirement is usually met irrespective of varying fact patterns. *See Streich v. American Family Mut. Ins. Co.,* 399 N.W.2d 210, 215-17 (Minn. Ct. App. 1987) (quoting *Ario v. Metro. Airport Comm'n*, 367 N.W.2d 509, 513 (Minn. 1985)).

Here*,* Plaintiff's claims are typical of those of all members of the class in that Plaintiff and the class members' claims arise out of Defendants' alleged failure to provide the proper right to cure notice prior to repossession.  As redress, Plaintiff seeks statutory damages to be distributed to each class member.  Accordingly, the class proposed in the Agreement satisfies the typicality requirement for class certification.

### 4.  *The Adequacy Requirement is Met.*

Under Rule 23(a)(4), Plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement has two prongs: (1) the representatives' attorney must be qualified, willing, and able to prosecute the case competently and vigorously; and (2) the named plaintiff's interests must not diverge from the interests of the class as a whole. *See Parkhill v. Minn. Mut. Life Ins. Co*., 188 F.R.D. 332, 339 (D. Minn. 1999); *Sonmore v. CheckRite Recovery Servs., Inc*., 206 F.R.D. 257, 263 (D. Minn. 2001) (citing *Paxton*, 688 F.2d at 562-3) ("The focus of Rule 23(a)(4) is whether: (1) the class representatives have common

interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."). Throughout this matter, Plaintiff's attorneys have demonstrated qualification, willingness, and ability to provide competent and vigorous representation. (*Strauss Decl*, ¶¶ 14-23). Plaintiff does not possess interests divergent from the class. Thus, Plaintiff respectfully requests the Court certify Plaintiff as the class representative and certify her attorneys as class counsel.

Plaintiff's counsel has competently and vigorously represented the interests of the class through court filings, court appearances and negotiations, and will continue to do so through anticipated future appearances. (*Strauss Decl*, ¶¶ 14-23). Through in-depth investigation and research into and the facts and the law, Plaintiff's attorneys were able to secure a fair and adequate settlement for the class and were able to do so expeditiously. (*Id*). Plaintiff's attorneys, Adam R. Strauss and Thomas J. Lyons, Jr. are experienced consumer class action attorneys, and practice exclusively in consumer protection, with an emphasis on FDCPA and wrongful repossession. (*Id*., ¶¶ 8-13; and Ex. 5); *see also* (Declaration of Thomas J. Lyons, Jr., ¶¶ 3-4 and Ex. A) ("Lyons Decl."). Both Mr. Strauss and Mr. Lyons have previously been class counsel in this District and others in various consumer class matters. (*Id*). Therefore, the Court should appoint Plaintiff's attorneys, Adam R. Strauss and Thomas J. Lyons, Jr. as class counsel.

Additionally, Plaintiff has demonstrated her ability to adequately represent this class by actively participating in the prosecution of this action. (Declaration of Michelle Kealy, ¶¶ 2-15). In fact, Plaintiff's awareness of consumer protection issues and diligent

record keeping practices led to the filing of this action, which provided the class members with their best chance at any recovery from these often-overlooked claims. (*Id*). Therefore, Plaintiff Michelle Kealy should be appointed the class representative for this Class.

### B. Plaintiff's Claim Satisfies the Rule 23(b)(3) Requirements.

In addition to Rule 23(a), a party must also satisfy one of the subsections of Rule 23(b). *St. Jude Med., Inc.*, 425 F.3d at 1119. Plaintiff seeks certification under Rule 23(b)(3). To satisfy Rule 23(b)(3), a plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *West Virginia Pipe Trades Health & Welfare Fund, at. al., v. Medtronic, Inc.*, No. 0:13-cv-01686 (JRT/FLN), 2018 WL 620383, at *4 (D. Minn. Jan. 30, 2018) (quoting Fed. R. Civ. P. 23(b)(3)).

#### 1. The Predominance Prong is Satisfied.

The predominance prong is met when the questions of law and fact between the class representative and the class members are "sufficiently cohesive." *Amchen Prods.*, Inc., 521 U.S. at 623 & n. 18. In making this determination, there are no bright lines. *Lockwood Motors*, 162 F.R.D. at 577. The inquiry focuses on common issues of liability. *Cumberland Farms, Inc. v. Braving Ferris Indus., Inc*., 120 F.R.D. 642, 647 (E.D. Pa. 1988). Differences in damages do not preclude class certification. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995) (holding the need for individualized damage determinations does not preclude class certification when the fact question of injury is

common to the class); *see also James v. Madigan*, 806 F. Supp. 239, 241 (M.D. Ala. 1992) ("It is therefore no bar to class certification that the extent of injury is not common to all class plaintiffs."); *Sefran v. United States of Am., AFL-CIO*, 132 F.R.D. 397, 402 (W.D. Pa. 1989) (holding that amount of damages sustained by each class member does not preclude class certification since issues of liability and damages can be appropriately separated to the extent necessary); *4 Alba Conte & Herbert Newberg, Newberg on Class Actions* § 4.26 (4th ed. 2002) (citing cases) (hereinafter "Newberg on Class Actions").

Here, the common factual and legal questions bearing on the liability of Defendants to the settlement class and the amount of damages to be recovered by the settlement class far predominate over any questions affecting individual class members. *See Cobb*, 295 N.W.2d 232, 236 (Minn. 1980) (Holding that proof of reliance is not necessary, "[t]he acts which induced reliance are the repeated acceptances of late payments and the occasional late charges assessed. The reliance is evidenced by the continued pattern of irregular and late payments."); *see also* 15 U.S.C. § 1692k(a)(2)(B) (damages under the FDCPA).   Indeed, where the possibility of any individualized variation in claims is remote, particularly in consumer class actions where the primary relief available is statutory damages arising from actions of the defendant generally directed at members of the class, courts routinely hold that the predominance requirement is satisfied.   *See Thinesen v. JBC Legal Group. P.C., et al*, No. 0:05-cv-00518 (DWF/SRN), 2005 WL 2346991, at *9-10 (D. Minn. Sep. 26, 2005); *Jancik v. Cavalry Portfolio Servs., LLC*, No.0:06-cv-03104 (MJD/AJB), 2007 WL 1994026, at *9 (D. Minn. July 3, 2007); *Brower v. Financial Crime Services, LLC*, No. 06-cv-4237 (FLN)

[ECF. 41] (D. Minn. Jun. 25, 2007); *Pobuda v. Financial Crimes*, No. 09-cv-01227 (DSD/AJB) [ECF 37] (D. Minn. Mar. 11, 2010); *Thompson v. NCA, et al*. No. 0:10-cv-02307 (SRN/FLN) [ECF. 92] (D. Minn. Oct. 24, 2012); *Fischbach v. Pinnacle*, No. 0:11-01925 (JJK) [ECF. 24] (D. Minn. Nov. 16, 2012); *Hartley v. Suburban Radiologic Consultants, Ltd*., 295 F.R.D. 357, 377 (D. Minn. 2013); *Arend v. Innovative Judgment Recovery, et. al.*, No. 0:14-cv-01243 (HB) [ECF. 20] (D. Minn. Oct. 31, 2014); *Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 273, 275 (4th Cir. 2010); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

Here, Plaintiff asserts that common questions exist as to whether Defendants provided the required cure notices prior to repossession.  The significant common questions that will resolve this case combined with the minimal potential for disparate effects caused by the conduct of Defendants means that the class satisfies the predominance requirement for class certification.

### 2. *The Superiority Prong is Satisfied.*

A class may be certified if class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy".  Fed. R. Civ. P. 23(b)(3).  To determine superiority, courts look to: (1) the interest in proceeding individually; (2) nature of any litigation already begun by class members; (3) the desirability of concentrating the litigation in the District of Minnesota; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A–D).

With respect to class members' interest in proceeding individually, one powerful factor that makes class treatment superior is the likelihood the individual class members

are unaware that they may possess a claim.  The notice provided by the class mechanism affords the opportunity for relief where otherwise there would be none.  *See e.g.*, *Kimball v. Frederick J. Hanna & Assocs., P.C.*, No. 0:10-cv-00130 (MJD/JJG), 2011 WL 3610129, at \*7 (D. Minn. Aug. 15, 2011) ("[A] class action ensures that the rights of class members, who are unaware that they possess a claim, or who cannot hire a lawyer, will receive justice); *Jancik*, 2007 WL 1994026, at \*11 (explaining, "the court had to consider the possibility that individuals did not know their rights, would not be able to find counsel willing to take their cases, and would not be willing to take on the burdens of litigation").

In this case, class treatment is superior to other available methods. First, there is no reason to believe that the class members have any interest in individually controlling the prosecution of separate actions. In fact, it is unlikely that individual class members are even aware of their ability to bring such claims. Through the class procedural mechanism, Plaintiff and her attorneys are able to reach the settlement class members and inform them of their potential claims and relief where otherwise there might be none. Second, there are no other claims that have been brought by class members. Third, concentrating the litigation in this District is desirable because it involves a Minnesota class under Minnesota law.  Finally, this case does not present any likely difficulties that would make a class action inferior to individual adjudication.  Rather, a class action would promote judicial efficiency by resolving the complaints of the hundreds of class members in one case.  Due to the large number of possible class members, a class action is necessary to avoid potentially crowding the docket with hundreds of similar cases.

Here, the difficulty of demonstrating liability and the uncertain potential reward per individual claimant make class treatment the superior method for resolving this dispute because it obtains some measure of relief for the class members, and promotes the policy of deterrence that would be undermined if Defendants only had to compensate Plaintiff's individual claims.  *See e.g.*, *Dryden v. Lou Budke's Arrow Fin. Co.*, 630 F.2d 641, 647 (8th Cir. 1980) (observing that deterrence is the purpose of statutory and liquidated damages provisions in remedial legislation).  As such, the settlement class proposed in the parties' Agreement satisfies the superiority requirement for certification.

Because the proposed settlement class satisfies all requirements for class certification, the Court should certify the class on the terms set forth in the proposed order stipulated to by the parties.  (*Strauss Decl.*, Ex. 3).

## II.    THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

There is a three-step process for approval of class action settlements, comprising of: (1) a preliminary approval of class action settlements; (2) provision of notice to the class; and (3) a final fairness hearing. *See Annotated Manual for Complex Litigation* § 21.632 (4th. ed. 2011) ("Manual for Complex Litigation"), accord, *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189 (D.D.C. 2017).  "First, counsel should submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation." *Manual for Complex Litigation*, § 21.632 at 497. A test traditionally applied in this preliminary fairness review is whether the proposed settlement falls within the range of possible final approval, or in other words, whether there is "probable cause" to notify the

class of the proposed settlement.  "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given the class members." *Manual for Complex Litigation,* § 21.633.

At this preliminary stage, the Court is not required to decide whether the settlement should be finally approved.  *Newberg on Class Actions* § 11:25 (4th Ed. 2002). Rather, the focus is to give notice of the proposed settlement to potential settlement class members, informing them of their opportunities to opt out or object to the settlement.  *Id.* A strong public policy favors settlements of class actions and courts should approach class settlements with a presumption in their favor.  *See e.g. Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999).

Plaintiff submits that the settlement proposed here is fair to all parties and the class members, and the proposed settlement is reasonable when considered in light of the contentious nature of this litigation, potential appeals as to disputed liability and class certifications, and the vagaries of a jury trial.  The settlement here is within the range of probable approval, and class members will be notified of the proposed settlement and their options to opt-out or to object to the proposed settlement, in accordance with the proposed class notice.

The proposed settlement is designed to provide a fair method of relief to class members, by providing a Fund in the amount of $400,000 in cash and account credit, to be shared depending on the circumstances of the repossession.  (*Strauss Decl.*, Ex. 1 at III.C).  This settlement also obviates the risk to class members of the potential delay of

18

protracted litigation.

It is also significant that the proposed settlement follows serious, informed and non-collusive negotiations in the context of a private mediation conducted and supervised by Magistrate Judge Boylan (Ret.).  The parties and their counsel recognize that litigating the matter further could take several additional years, and that there is uncertainty in the outcome and potential appeals.  In contrast, the settlement set forth in the Agreement confers immediate benefits upon the class, as well as certain recovery for the class.

## III.    THE PROPOSED CLASS NOTICE SHOULD BE APPROVED.

In this case, the parties agreed to a class administration process, which will be paid in advance by Wings and subsequently credited against the Fund. (*Strauss Decl.*, Ex. 1 at III.F).  The agreed class administration process is designed to minimize any burden on class members so as to facilitate expeditious payment to class member claims.  Any remaining funds will be distributed as a *cy pres* award to the Federal Bar Association, Minnesota Chapter, *Pro Se* Project.  (*Id*. at III.J.7).  Importantly, no remaining funds will revert back to Defendants.  (*Id*).  This *cy pres* use of unclaimed funds, for the benefit of the class, is a proper use of the unclaimed portion of the settlement fund.  *See e.g.*, *In re Airline Ticket Antitrust Litigation*, 307 F.3d 679, 683 (8th Cir. 2002).

The proposed class notice satisfies due process requirements.  Rule 23 requires that the notice state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for

requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). The proposed class notice via U.S. First-Class mail, together with the toll-free number established by First Class, and referenced on the notice satisfies these requirements. Federal district courts within the Eighth Circuit have approved such notice. *See e.g.*, *In re Target Corp. Customer Data Security Breach Litigation*, 0:14-md-02522 (PAM) [ECF. 364], 215 U.S. Dist. LEXIS 34554 (D. Minn. 2015); *see also Hartley v. Suburban Radiologic Consultants, Ltd.*, No. 0:11-cv-02664 (JRT/JJG), 2014 WL 1775692, at *1 (D. Minn. May 5, 2014) (Rule 23 was satisfied when class notice was sent to consumers by U.S. First-Class mail only); *Lehmeyer v. Messerli & Kramer, P.A.*, No. 0:15-cv-02419 (HB), 2016 WL 1576439, at *2 (D. Minn. Apr. 15, 2016) (same); *Sibley v. Sprint Nextel Corporation*, No.2:08-cv-02063-KHV [ECF. 844] (D. Kan. Jun. 27, 2018) (citing *3 Newberg on Class Actions § 8:28* (5th ed. 2017) (first-class mail "ideal" individual notice)); *see also Newberg on Class Actions* § 8:28 (5th Ed.) (Parties may also reduce the cost of notice by sending postcards instead of larger envelopes, courts have held that postcard notice is more than sufficient).

Under the proposed notice program here, within 30 days of the Court issuing a preliminary approval order, or at a later date approved by the Court upon good cause shown, the class notice will be mailed to class members. (*Strauss Decl*. Ex. 1 at III.B.1; and Exs. 2-3). First Class, the third-party administrator in this case, will run each class member's last known address through the U.S. Postal Service's National Change of Address database and will use the best available address for sending class notice. (*Id*, Ex.

1 at III.F).  Additionally, skip tracing shall be performed for all returned notices.  (*Id*). The class administrator will provide a toll-free phone number by which class members may receive answers to any questions they may have.  (*Id*; and Ex. 2).  The class notice will include a date certain by which class members must submit any objection they may have, or request exclusion from the class (*that date will be inserted as agreed to by the parties, once the Court has issued a ruling on this motion and set a date for the final fairness hearing*).  (*Id*).  Because the notice program will provide direct notice to all class members, and is the best notice practicable under the circumstances, the requirements of Rule 23 and due process are met.

The class representative will apply to the Court for an award of $5,000.00, which includes damages pursuant to the FDCPA and the UCC, as well as an amount for her service as class representative.  (*Strauss Decl*, Ex. 1 at III.M).  Any amount awarded by the Court will be paid from the Fund.  (*Id*).  Finally, as part of the common Settlement Fund, Plaintiff will apply to the Court for her reasonable attorneys' fees and costs, up to 33.3% of the Fund.  (*Id*. at III.L).  Plaintiff's counsel will make an application for fees with supporting documentation prior to the final approval hearing. (*Id*).  Plaintiff will provide information regarding the amount of fees sought in the class notice, in order to meet any requirement of Rule 23(h) to direct notice of the fee claimed.  *See Keil v. Lopez*, 862 F.3d 685, 703–05 (8th Cir. 2017).

## CONCLUSION

Plaintiff respectfully requests, and Defendants do not oppose, that the Court issue an order certifying the Settlement Class, preliminarily approving the Settlement

Agreement and the Class Notice, appointing Plaintiff as the Class Representative, and appointing Plaintiff's attorneys as Class Counsel.  In addition, Plaintiff requests that the Court schedule the matter for a final fairness hearing.

Dated:  June 10, 2019            **TARSHISH CODY, PLC**

By:    _s/ Adam R. Strauss_
         Adam R. Strauss (#0390942)
         ars@attorneysinmn.com
         6337 Penn Avenue South
         Minneapolis, Minnesota 55423
         Telephone: (952) 361-5556
         Facsimile: (952) 361-5559

Dated:  June 10, 2019            **CONSUMER JUSTICE CENTER, P.A.**

By:    s/ Thomas J. Lyons, Jr.
         Thomas J. Lyons, Jr. (#0249646)
         tommy@consumerjusticecenter.com
         367 Commerce Court
         Vadnais Heights, Minnesota 55127
         Telephone: (651) 770-9707
         Facsimile: (651) 704-0907

                    **ATTORNEYS FOR PLAINTIFFS**