# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement" or "Settlement") is made by and between plaintiff Michelle Kealy ("Plaintiff"), on behalf of herself and the Settlement Class Members (as defined below), on the one hand, and Defendants Wings Financial Credit Union ("Wings") and Roquemore Holdings LLC d/b/a Roquemore & Roquemore ("Roquemore" and together, with Wings, the "Defendants") on the other hand (collectively, the "Parties"). Defendants, Class Counsel (as defined below) and Plaintiff hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Approval Order (as defined below), all claims of the Plaintiff and the Settlement Class Members in the action entitled *Michelle Kealy f/k/a Michelle Mamula v. Wings Financial Credit Union and Roquemore Holdings LLC d/b/a Roquemore & Roquemore*, U.S.D.C. District of Minnesota, Case No. 18-cv-01226 JRT/LIB (the "Action") shall be settled, compromised and released upon the terms and conditions contained herein.

## I.    RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances:

A.    In the Action, Plaintiff asserted claims on behalf of herself and a purported class of others similarly situated, that Defendants violated Minn. Stat. § 336.9-609 and Minnesota common law conversion, by failing to send a *Cobb* notice (i.e., "right to cure notice") prior to the repossession of automobiles in which Wings had been granted a security interest, and that Roquemore violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6) (the "FDCPA"). In addition, Plaintiff asserted individual causes of action against Wings and Roquemore for violations of common law invasion of privacy and individual causes of action against Roquemore for violations of the FDCPA.

B.    Defendants vigorously deny all claims asserted in the Action and deny all allegations of wrongdoing and liability.  Defendants nevertheless desire to settle the Action on the

1

terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing these proceedings.

C.      This Agreement resulted from and is the product of extensive, good faith, arm's length negotiations, including a full day private mediation conducted by United States Magistrate Judge Arthur Boylan (Ret.) on February 13, 2019.  Roquemore has only participated in this settlement by being available by phone as needed.

D.      Plaintiff and Class Counsel have investigated the facts and law underlying the claims asserted in the Action.  Plaintiff and Class Counsel requested, and Defendant Wings produced, documents regarding Plaintiff's claims and Class Counsel also engaged in numerous discussions with Defendants regarding the claims.  Prior to the Final Approval Hearing (as defined below), Plaintiff and Class Counsel shall obtain confirmatory discovery from Defendant Wings as contemplated in Section III.Q.

E.      As a result of these efforts, the Parties enter into this Agreement, subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiff and the Settlement Class Members in exchange for: (1) Wings' agreement to pay (in cash and account credit) up to the sum of Four Hundred Thousand Dollars ($400,000) as described in Section III.H below, and other consideration described below with respect to credit reporting. The Parties also agreed that any funds remaining from uncashed checks shall be provided to a *cy pres* recipient, the Federal Bar Association, Minnesota Chapter's *Pro Se* Project.

F.      The Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any Party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement.  It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree to the Settlement, subject to approval by the Court, as follows:

## II.    DEFINITIONS

A.    In addition to the terms defined elsewhere within this Agreement, the following defined terms apply throughout this Agreement and the attached exhibits:

1.    "Account Credit" means a one-time credit against a Deficiency Balance (as defined below) owed by a Settlement Class Member to Wings on the Retail Installment Contract and Security Agreement ("RIC") pursuant to which the Settlement Class Member's vehicle was repossessed. Account Credits may be issued to Settlement Class Members eligible to receive a Settlement Award as fully described in Section III.I.

2.    "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

3.    "Class Counsel" means Consumer Justice Center P.A. and Thomas J. Lyons, Jr., and Adam R. Strauss and Tarshish Cody.

4.    "Class Notice" or "Notice Program" means all types of notice that will be provided to the Settlement Class, including the Mail Notice (defined below) and any different or additional notice that might be ordered by the Court. A description of the contemplated Notice Program is provided in Section III.F.

5.    "Court" means the United States District Court for the District of Minnesota.

6.    "Defendants' Counsel" means, together, counsel of record for Wings and Roquemore.

3

7.     "Deficiency Balance" means all principal, interest, fees, and charges that remain due and owing to Wings under the terms of any RIC to which any person in the Settlement Class is a party.

8.     "Effective Date" means the fifth day after occurrence of the last of the following events:

a.     The Parties, Defendants' Counsel, and Class Counsel have executed this Agreement;

b.     The entry, without material change, of the Final Approval Order; and

c.     The final disposition of any related appeals, and in the case of no appeal or review being filed, expiration of the applicable period to appeal.

9.     "Final Approval Hearing" means the date of the hearing when the Court considers the Parties' request to enter the Final Approval Order granting final approval of the Settlement and to determine the amount of fees and costs awarded to Class Counsel and the amount of the incentive award to Plaintiff.

10.     "Final Approval Order" or "Final Approval" means the order and judgment the Court enters upon finally approving the Settlement in connection with the Final Approval Hearing, the proposed form of which is attached hereto as Exhibit A.

11.     "Mail Notice" means the notice that will be provided pursuant to Section III.F of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit B.

12.     "Notice Costs" means the costs of printing and providing notice to persons in the Settlement Class (including, but not limited to, costs for Mail Notice and any different or additional notice ordered by the Court).

13.     "Notice Deadline" shall have the meaning set forth in Section III.B.1 of this Agreement.

14.     "Opt-Out and Objection Deadline" shall have the meaning set forth in Section III.B.1 of this Agreement.

15.     "Preliminary Approval Order" means the order the Court enters upon preliminarily approving the Settlement, the proposed form of which is attached hereto as Exhibit C. "Preliminary Approval" means the date the Court enters, without material change, the Preliminary Approval Order.

16.     "Released Claims" shall have the meaning set forth in Section III.K of this Agreement. The "Releases" means all of the releases contained in Section III.K of this Agreement.

17.     "Released Parties" means those persons and entities released as set forth in Section III.J.1 of this Agreement.

18.     "Releasing Parties" shall have the meaning set forth in Section III.K of this Agreement.

19.     "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are set forth in this Agreement and the attached exhibits, which are incorporated by reference herein.

20.      "Settlement Administrator" means First Class, Inc., subject to approval by the Court. The Settlement Administrator shall be responsible for providing the Class Notice as well as services related to administration of the Settlement.

21.     "Settlement Amount" shall have the meaning set forth in Section III.C.1 of this Agreement.

22.     "Settlement Award" means Account Credits and cash payments that may be available to each eligible Settlement Class Member pursuant to Sections III.H and III.I of this Agreement.

23.     "Settlement Class" means the approximately 400 accounts identified by Wings (1) who were party to vehicle RICs with Wings that were subject to Minnesota law; and (2) whose vehicles subject to such RICs were repossessed by or on behalf of Wings in Minnesota between May 2, 2015 through the date this Action was filed, excluding customers who are deceased or where the repossession was the result of a bankruptcy.  The total Settlement Class is subject to adjustment based upon Wing's final confirmation of the class size.

24.     "Settlement Class Member" means any person in the Settlement Class who does not request exclusion from the Settlement pursuant to the terms of this Agreement and the Preliminary Approval Order. Within the accounts identified in the Settlement Class, there were approximately forty (40) co-signers. Settlement Class Member includes the co-signers for each account.

25.      "Settlement Costs" means: (i) any award of attorneys' fees and costs to Class Counsel approved by the Court; (ii) any incentive award to Plaintiff approved by the Court; (iii) all Notice Costs; (iv) all costs of administering the Settlement, including, but not limited to, the cost of printing and mailing settlement payments; and (v) the fees, expenses, and all other costs of the Settlement Administrator.

26.     "Settlement Term Sheet" means the Settlement Term Sheet executed by the Parties in connection with mediation on February 13, 2019.

B.     Capitalized terms used in this Agreement but not defined above shall have the meaning ascribed to them in this Agreement, including the attached exhibits.

## III.   TERMS OF SETTLEMENT

A.     Conditional Certification of the Settlement Class. Solely for the purposes of settlement, providing Class Notice, and implementing the Settlement, the Parties agree, subject to Court approval, to conditional certification of the Settlement Class. The Parties stipulate, subject to Court approval, to the appointment of Thomas J. Lyons, Consumer Justice Center, P.A. and Adam R. Strauss, Tarshish Cody, PLC as Class Counsel. If the Settlement is not finally approved by the Court or is not finalized for any reason whatsoever, the certification of the Settlement Class is void, the Action will return to its status as it existed prior to execution of this Agreement and prior to execution of the Settlement Term Sheet, and no doctrine of waiver, estoppel, or preclusion will be asserted in any class certification proceeding, in response to any motion seeking to compel arbitration, or in any other aspect of the Action or any other proceeding. No agreements, documents, or statements made by or entered into by any of the Parties in connection with the Settlement may be used by Plaintiff, Defendants, any person in the Settlement Class, or any other person to establish liability, any defense, or any of the elements of class certification, whether in the Action or in any other proceeding.

B.     Preliminary Approval.

1.     Preliminary Approval Motion. Within twenty (20) days following complete execution of this Agreement, Plaintiff will file this Agreement with the Court and move the Court for entry of the Preliminary Approval Order, which shall include provisions that: (a) preliminarily approve the Settlement reflected herein as fair, adequate, and reasonable to the Settlement Class, and within the reasonable range of possible final approval; (b) for settlement purposes only, conditionally certify the Settlement Class, appoint Class Counsel as counsel for the Settlement Class, and appoint Michelle Kealy as the class representative; (c) approve the form of Class Notice and find that the Notice Program constitutes the best

7

notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (d) direct that notice be provided to the Settlement Class, in accordance with this Agreement, within thirty (30) days following entry of the Preliminary Approval Order (the "Notice Deadline"); (e) establish a procedure for persons in the Settlement Class to object to the Settlement or exclude themselves from the Settlement Class, and set a deadline thirty (30) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself from the Settlement Class or seek to intervene in the Action (the "Opt-Out and Objection Deadline"); (f) pending final determination of whether the Settlement should be approved, bar and enjoin all persons in the Settlement Class, directly, on a representative basis, or in any other capacity, from commencing or prosecuting against any of the Released Parties any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims; (g) pending final determination of whether the Settlement should be approved, stay all proceedings in the Action except those related to effectuation of the Settlement; (h) schedule a hearing on Final Approval of the Settlement, which shall be scheduled no earlier than thirty (30) days after the Opt-Out and Objection Deadline; (i) permit Wings to disclose to Class Counsel and the Settlement Administrator the Class List (as defined below) on a confidential basis, and solely for use in implementation of the Settlement within ten (10) days after Preliminary Approval, and to disclose to Class Counsel the Automated Universal Dataform ("AUD") forms and other documentation contemplated by Section III.C.2 below on a confidential basis, and solely for use in implementation of the Settlement; and (j) set the deadline for Class Counsel to file a motion for Attorneys' Fees, Costs, and Class Representative Award twenty-one (21) days prior to the Opt-Out and Objection Deadline.

      2.    <u>Stay/Bar of Proceedings</u>. All proceedings in the Action will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the Settlement. Pending determination of whether the Settlement should be

granted Final Approval, Plaintiff, persons in the Settlement Class, and Defendants agree not to pursue any claims or defenses otherwise available to them in relation to the Action, and further agree that the Final Approval Order shall include an injunction that no Settlement Class Member, and no person acting or purporting to act directly or indirectly on behalf of a Settlement Class Member, or acting on a representative basis or in any other capacity, will commence or prosecute against any of the Released Parties any action or proceeding asserting any of the Released Claims. The Preliminary Approval Order will enjoin the commencement or prosecution of the Released Claims by persons in the Settlement Class against any of the Released Parties pending further order of the Court. The Settlement will be conditioned upon the entry of such an injunction in both the Preliminary Approval Order and the Final Approval Order.

C.    <u>Settlement Considerations.</u>

1.    <u>The Settlement Amount.</u> Full and complete consideration for the Settlement shall comprise the total amount of $400,000.00 (the "Settlement Amount"), consisting of (a) $300,000 in cash to be contributed on behalf of Wings and (b) $100,000.00 to be provided by Wings in the form of Account Credits to accounts of Settlement Class Members associated with the RICs referenced in the definition of "Settlement Class" above. The Settlement Amount shall be used to satisfy all payments to be made pursuant to the Settlement including, without limitation, all Settlement Costs and all Settlement Awards to eligible Settlement Class Members, as detailed below, and the Remaining Funds (as described below) distribution to a *cy pres* recipient. Under no circumstances shall Wings and its insurer be required to provide more than $400,000.00, in the stated combination of cash and/or Account Credits, and under no circumstances shall Roquemore be required to pay more than its separate cash settlement referenced in Section IV.D for release of all individual claims asserted by Ms. Kealy in the Action and this separate cash Settlement Amount shall, in part, be deemed by the parties as consideration for all

Defendants. The Settlement Amount shall be reduced by Settlement Costs and attorneys' fees, prior to making any Settlement Awards to Settlement Class Members.

        2.    <u>Credit Reporting</u>. Wings will submit requests that TransUnion, Experian, Equifax, and Innovis (the "Credit Bureaus") delete the credit reporting tradeline relating to the vehicle that was repossessed for the Settlement Class Members. Wings will provide Class Counsel copies of the written requests Wings submits to the Credit Bureaus for the deletion of the credit reporting tradeline. All documentation provided to Class Counsel pursuant to this Section III.C.2 shall be used solely for implementation of the Settlement as expressly permitted herein. Wings does not represent or warrant that the Credit Bureaus will take any particular action in response to Wings' requests made pursuant to this Section III.C.2 and will not be liable for a Credit Bureaus' failure to make requested updates, but expects that each of the Credit Bureaus will make the requested changes as required by the Fair Credit Reporting Act.

        3.    <u>Return of Funds Upon Termination</u>. In the event the Settlement is not approved, or is terminated, canceled, or final approval is reversed on appeal, or the Settlement fails to become effective for any reason, all funds paid by Defendants (if any) shall be returned to within five (5) business days following the event triggering non-approval, termination, cancellation, or failure to become effective. However, Defendants are not required to pay any funds until after the Effective Date.

    D.    <u>Settlement Administrator</u>. The Settlement Administrator shall administer the Class Notice Program and the Settlement Award distribution process. Within ten (10) days following Preliminary Approval, if permitted by the Preliminary Approval Order, Wings shall disclose to the Settlement Administrator and to Class Counsel, on a confidential basis, the "Class List," which shall include the following information for each person in the Settlement Class (to the extent it is reflected in reasonably available computerized account records of Wings): (1) name; (2) Loan Number; (3) last known mailing address; and (4) principal amount of the Deficiency Balance owed as of the time of repossession and updated to the extent feasible. The Settlement Administrator

and Class Counsel shall maintain the Class List and any other information sufficient to identify an individual Wings customer in a secure and confidential manner, shall not share the Class List with any other person or entity except as expressly set forth herein, and shall not use the Class List for any purpose except implementation of the Settlement, solely as expressly set forth herein.

  E. <u>Data Protection</u>. By entering into this Agreement, and as a condition precedent to Wings' disclosure, pursuant to this Agreement, of any information sufficient to identify an individual Wings customer, including without limitation the Class List and other documentation referenced in Section III.C.2 above, Class Counsel expressly agrees that Class Counsel (and his employees, agents, contractors, heirs, and assigns) will (1) treat all information provided to Class Counsel by Wings, including but not limited to the Class List and information derived from the Class List and other documentation, as confidential; (2) ensure that confidential information is not disclosed to any third party (including affiliates) without Wings' prior written consent; and (3) protect such confidential information from unauthorized access, acquisition, theft, modification, destruction or loss using commercially reasonable administrative, technical, and physical safeguards implemented using a reasonable degree of care, but not less than the degree of care Class Counsel uses to safeguard its own confidential or proprietary information. Wings acknowledges that, upon approval by the Court, Class Counsel will have an attorney-client relationship with Settlement Class Members, subject to applicable law. Prior to any party providing the Class List or any other information sufficient to identify an individual Wings customer to the Settlement Administrator, the Parties shall require the Settlement Administrator to agree in writing that it (and its employees, agents, contractors, heirs, and assigns) will (1) treat all information provided to the Settlement Administrator by Wings, Roquemore, or Class Counsel, including but not limited to the Class List and information derived from the Class List, and credit deletion requests referenced above, as confidential; (2) ensure that confidential information is not disclosed to any third party (including affiliates) without Wings' prior written consent; and (3) protect such confidential information from unauthorized access, acquisition, theft, modification, destruction or loss using commercially reasonable administrative, technical, and physical safeguards

11

implemented using a reasonable degree of care, but not less than the degree of care the Settlement Administrator uses to safeguard its own confidential or proprietary information.

F.     Settlement Class Notice Program. The Settlement Administrator will provide Class Notice in the forms approved by the Court, as detailed below, by the Notice Deadline:

1.     Direct Notice.    The Direct Notice will include summary information pursuant to Fed. R. Civ. P. 23(c)(2)(B).   The Settlement Administrator will provide individual notice as follows:

a.     Mail Notice.  Notice by U.S. Mail to the most recent mailing address of each person in the Settlement Class as reflected in the Class List (the "Mail Notice") by the Notice Deadline. A National Change of Address update shall be performed by the Settlement Administrator before mailing the Mail Notice; all costs of this update will be considered Settlement Costs and paid from the Settlement Amount. Skip tracing shall be performed for all returned direct mail; all costs of skip tracing will be considered Settlement Costs and paid from the Settlement Amount. The proposed form of Mail Notice, subject to Court Approval, is attached hereto as Exhibit B.

2.     Toll-Free Settlement Hotline Notice.  The Settlement Administrator will establish and maintain an automated toll-free telephone line for persons in the Settlement Class to call with, and/or to leave questions or messages regarding, Settlement-related inquiries, to answer the questions of persons who call with or otherwise communicated such inquiries (except that the Settlement Administrator shall not give, and shall not be expected to give, legal advice).

G.     CAFA Notice. Defendants shall be responsible for timely compliance with all CAFA Notice requirements and will confirm, in writing, to Class Counsel that such notices were timely submitted.

H.     Settlement Awards.

1.      Awards. Except as set forth herein, Settlement Class Members will be entitled to a Settlement Award, which will be payable as described below. Following the deduction of Settlement Costs, the remaining balance of the Settlement Amount shall be distributed as the Settlement Award, and payable through a combination of cash and an Account Credit, as described as follows and in Section III.I below, and subject to Court approval: (a) the cash component of the settlement fund will be divided equally among the approximately 400 subject accounts, which is expected to result in a cash award of approximately $360 per account based on current estimates; and (b) Each account whose vehicle was repossessed between May 3, 2017 through May 2, 2018 may receive an additional fifty dollars and zero cents ($50.00) in addition to the amounts described in H.1.a. These amounts are subject to *pro rata* adjustment depending on the balance of the Settlement Amount remaining after payment of all Settlement Costs (the "Remaining Balance") and based on final determination of class size and number of class members with repossessions occurring within one year from the date lawsuit was filed.  The Settlement Award, whether cash, credit, or both cash and credit, will be divided equally among each account (i.e., if there is a primary borrower and a co-signer, they will jointly receive the benefit of the Settlement Award on a per account basis, rather than each receiving their own check or separate credit).

2.      Publication of Award Estimates. The Mail Notice will reference the range of good faith estimates by Class Counsel for Settlement Awards as described in Section III.H.1 above.

3.      Obligations of Settlement Class Members Unaffected by Settlement. With the exception of the issuance of Account Credits by Wings to Settlement Class Members pursuant to this Agreement (per relevant repossessed vehicle) as well as the Releases set forth in section III.K, the Settlement shall not affect debts owed and/or contracts between Plaintiff or Settlement Class Members and Wings,  or any existing or future obligations thereto between Plaintiff or Settlement Class Members and Wings.

4.     Taxes. Defendants shall have no responsibility for payment of taxes or tax-related expenses.

I.     Calculation and Distribution of Settlement Awards.

1.     Account Credits. Wings will satisfy Settlement Awards in part through Account Credits, provided that any Settlement Class Members receiving Account Credits have an existing Deficiency Balance at the time of Preliminary Approval.  The total credits of $100,000 will be allocated equally among each of the subject accounts with a deficiency balance.

2.     Settlement Award Payments. If the Settlement Class Member is eligible to receive a cash payment, such cash payments shall be paid out of the Settlement Amount remaining after payment of all Settlement Costs, and will be in addition to provision of Account Credits. The Settlement Administrator shall mail, by first class mail, a check to each eligible Settlement Class Member entitled to a cash payment who is the primary Wings borrower, except in the case of accounts involving a co-signer and where a current address cannot be found for the primary Wings borrower, the Settlement Administrator will mail a single joint check to the co-signer.  If neither the primary Wings borrower nor the co-signer can be located, the amount of the check they would have received will be allocated to the cy pres award. The Settlement Administrator will perform skip tracing and re-mailing, as necessary to effectuate delivery of checks; all costs of such work will be considered Settlement Costs and paid from the Settlement Amount. Checks will be valid for ninety (90) days after the date on the check. Any Settlement Class Member who fails to negotiate the check within the ninety (90) day period forever waives and releases his or her claims for payment of the amount represented by the settlement check, which shall be returned to the Settlement Amount.

J.     Time of Payments, Account Credits, and Credit Reporting. Payment of Settlement Costs, cash payments of Settlement Awards, Account Credits, and credit reporting shall occur in the following sequence:

1. <u>Administrative Costs</u>. Wings shall pay any costs of the Notice Program and settlement administration incurred prior to the Effective Date directly to the Settlement Administrator, and such payments shall constitute Settlement Costs, which shall be credited against and reduce the remaining balance of the $300,000.00 cash portion of the Settlement Amount.

2. <u>Payment of Attorneys' Fees and Incentive Award</u>. Within ten (10) days of the Effective Date, Wings shall pay (a) to Class Counsel any attorneys' fees and expenses approved by the Court; and (b) to Plaintiff the cash portion of any incentive fee approved by the Court. Such payments shall constitute Settlement Costs, which shall be credited against and reduce the remaining balance of the cash portion of Wings' $300,000.00 Settlement Amount. Class Counsel shall provide Wings with executed IRS Forms W-9 in a form acceptable to Wings prior to issuance of such payments.

3. <u>Determination of Settlement Costs and Settlement Awards</u>. Within twenty (20) days following the Effective Date, the Settlement Administrator shall (a) advise Class Counsel and Wings Counsel of the total and final amount of the Settlement Costs (including any projected future costs for completion of all administration of the Settlement); and (b) calculate, and advise Class Counsel and Wings Counsel of, the amounts of the Settlement Awards due to each Settlement Class Member in accordance with the terms of this Agreement.

4. <u>Account Credits</u>. Account Credits will be made directly by Wings to accounts of eligible Settlement Class Members associated with the RICs referenced in the definition of "Settlement Class" above within thirty (30) days following the Effective Date. All Account Credits shall be credited against and reduce the remaining balance of Wings' $100,000.00 share of the Settlement Amount for credits.

5. <u>Credit Reporting Requests</u>. Within fifty (50) days of the Effective Date, Wings will make the credit-reporting requests to the Credit Bureaus contemplated by

Paragraph III.C.2 above and provide copies of the associated documentation to Class Counsel.

6.     <u>Distribution of Payments to Settlement Class Members</u>. Within sixty (60) days following the Effective Date, the Settlement Administrator shall distribute to Settlement Class Members any cash portion of their respective Settlement Awards. Within thirty (30) days following the Effective Date, Wings will pay to the Settlement Administrator the remaining balance cash portion of the Settlement Amount after deducting payments made (or to be made).

7.     <u>Remaining Funds</u>. Any monies that remain undistributed more than ninety (90) days following the last day for checks to be cashed as set forth in Section III.I.2 above ("Remaining Funds") shall be distributed to the Federal Bar Association, Minnesota Chapter, *Pro Se* Project, as *cy pres*, subject to Court approval. No Remaining Funds shall revert to Defendants.

K.     <u>Releases</u>.

1.     As of the Effective Date, Plaintiff, the Settlement Class Members, and the other Releasing Parties (as defined below) will be deemed to provide the following releases to the Released Parties (as defined below):

Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns, and any authorized users of their accounts (together, the "Releasing Parties"), fully release and forever discharge Wings and Roquemore and each and all of their present, former, and future direct and indirect parent companies, affiliates, insurers, subsidiaries, agents, successors, and/or predecessors in interest and all of the aforementioneds' respective officers, directors, employees, attorneys, shareholders, agents, assigns, and vendors (together, the "Released Parties") from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state, or federal law, whether by Constitution, statute, contract, rule, regulation,

any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order: (a) that arise out of or are related in any way to repossession of his or her vehicle, including, but not limited to, claims under or for violations of Minnesota Statutes section 336.9-609, including as interpreted by *Cobb v. Midwest Recovery Bureau Co*., 295 N.W.2d 232 (1980), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and any other statutory or common law claim, including any claim under or for violation of federal or state unfair and deceptive practices statutes, invasion of privacy, conversion, trespass, breach of contract, unjust enrichment, specific performance, and/or promissory estoppel; and/or (b) that arise out of or relate in any way to the administration of the settlement, including but not limited to failure for any Credit Bureau to delete a tradeline upon a request for deletion from Wings pursuant to this Agreement, whether the claims are brought directly by or on behalf of any Settlement Class Member in an individual or class action, representative action, or in any other capacity, with respect to any form of relief, including, without limitation, damages, restitution, disgorgement, penalties and injunctive or declaratory relief (the "Released Claims").

Without limiting the foregoing, the Released Claims specifically extend to claims that Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement, and the releases contained herein, become effective. In connection with such releases, Plaintiff and the Settlement Class Members acknowledge that they are aware that they may hereafter learn facts in addition to, or different from, those facts they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally, and forever the released Parties from all Released Claims, and in furtherance of such intention, the releases of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or

17

different facts.  This settlement agreement however does not release any claims against the credit reporting agencies or to the extent that Wings failed to comply with any provision of the settlement agreement any future claims related to breach of this agreement.

       2.      As of the Effective Date, Wings and Roquemore will be deemed to mutually release each other from any and all claims asserted in, relating to, or arising out of the Action.

       L.      <u>Attorneys' Fees And Costs</u>. Plaintiff shall move the Court for an award of attorneys' fees and costs to be paid to Class Counsel from the Settlement Amount, not to exceed one-third of the Settlement Amount ($133,333). Defendants reserve the right to oppose such a motion.  Court approval of attorneys' fees and costs, or their amount, will not be a condition of the effectiveness, finality, or enforceability of the Settlement and this Agreement.

       M.      <u>Incentive Award</u>. Class Counsel shall move the Court for an Incentive Award to Plaintiff not to exceed $5,000.00 in cash paid from the Settlement Amount.  Defendants reserve the right to oppose such motion.  The cash amount of the Incentive Award (or any lesser amount as awarded by the Court) shall be deducted from and reduce the $300,000.00 cash portion of the Settlement Amount owed by Wings. Court approval of the Incentive Award, or its amount, will not be a condition of the effectiveness, finality, or enforceability of the Settlement and this Agreement. As a Settlement Class Member, Plaintiff shall also be entitled to the Credit Reporting consideration contemplated by paragraph III.C.2 above.

       N.      <u>Opt-Out Right/Termination</u>.

       1.      <u>Opt-Out Requirements</u>. Persons in the Settlement Class may request exclusion from the Settlement Class by sending a written request to the Settlement Administrator at the address designated in the Class Notice, postmarked no later than the Opt-Out and Objection Deadline. Exclusion requests must: (i) be signed by the person in the Settlement Class who is requesting exclusion; (ii) include the full name, address, and Wings Loan Number of the person in the Settlement Class requesting exclusion; and (iii) include a statement to the following effect: "I/we request to be excluded from the

settlement in the Kealy action." No request for exclusion will be valid unless all of the information described above is included. No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person in the Settlement Class, may exclude any other person in the Settlement Class from the Settlement Class.

2.   <u>Retention of Requests for Exclusion</u>. The Settlement Administrator will retain a copy of all requests for exclusion and will, upon written request, provide copies of any such requests to counsel for the Parties. Class Counsel will keep any such opt out information confidential and use it only for purposes of determining whether a person in the Settlement Class has properly opted out.

3.   <u>Cap On Opt-Outs</u>. All persons in the Settlement Class who do not request exclusion in accordance with the terms of this Agreement will be bound by all determinations and judgments in the Action. In the event that the number of valid opt-out requests exceeds ten percent (10%) of the Settlement Class, Wings, in its sole discretion, may terminate the Settlement. Wings shall inform Class Counsel and Roquemore Counsel within thirty (30) days after the Parties are advised in writing that the number of valid opt-out requests is greater than ten percent (10%) of the Settlement Class as to whether Wings will exercise the right of termination. In the event that the Settlement is terminated pursuant to this provision, the Parties will be returned to the *status quo ante* as if no settlement had been negotiated or entered into.

O.   <u>Objections To The Settlement</u>.

1.   <u>Right To Object</u>. Any Settlement Class Member who has not previously requested exclusion in accordance with the terms of this Agreement may appear at the Final Approval Hearing to object to the proposed Settlement and/or to the application of Class Counsel for an award of attorneys' fees and costs and/or the incentive award, but only if the Settlement Class Member has first filed a written objection with the Court, in accordance with the requirements set forth below, by the Opt-Out and Objection Deadline. Any Settlement Class Member who does not provide a written objection in the manner

described in this Section shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, or the award of any attorneys' fees and costs and/or incentive award. Further, any Settlement Class Member who intends to appear at the Final Approval Hearing must file and serve on all parties a Notice of Intention to Appear with the Court.

      2.    <u>Objection Requirements</u>. To be heard at the Final Approval Hearing, a Settlement Class Member must make any objection in writing and file it with the Court by the Opt-Out and Objection Deadline. The objection must also be mailed to each of the following, postmarked no later than the Opt-Out and Objection Deadline: (i) Class Counsel – Thomas J. Lyons Jr., Consumer Justice Center P.A., 367 Commerce Court, Vadnais Heights, MN 55127; and (ii) Wings Counsel – Christopher R. Morris, Bassford Remele PA, 100 South Fifth Street, Suite 1500, Minneapolis, Minnesota 55401. An objection must: (i) attach documents establishing or provide information sufficient to allow the Parties to confirm, that the objector is a Settlement Class Member; (ii) include a statement of such Settlement Class Member's specific objections; and (iii) state the grounds for objection, as well as identify any documents such objector desires the Court to consider.

P.    <u>Final Approval</u>. Within thirty (30) days after the Opt-Out and Objection Deadline, Plaintiff shall request that the Court enter the Final Approval Order, which shall include provisions that: (a) finally approve the Settlement as fair, reasonable, and adequate to the Settlement Class; (b) find that the Class Notice as given was the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (c) approve the plan of distribution of the Settlement Amount; (d) finally certify the Settlement Class; (e) confirm that Plaintiff, Settlement Class Members and the Releasing Parties have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties; and (f) direct entry of judgment incorporating the terms of the Final Approval Order, without costs to any Party, except as provided in this Agreement.

Q.      <u>Confirmation</u>. Wings will provide confirmation of the class list and associated information by way of Affidavit. Wings will confirm: (i) the Class List and the information contained in the Class List, including the determination, creation, and identification of the Class List and/or Settlement Class; and (ii) the Deficiency Balances for the accounts identified in the Class List. If the foregoing information, whether provided before, during or after mediation, is proved to be inaccurate the Parties agree to return to mediation before the Honorable Judge Arthur Boylan (Ret.).

R.      <u>Confidentiality</u>. The terms of this Settlement shall remain confidential until the motion for preliminary approval of the Settlement is filed with the Court; provided, however, that the Parties may jointly report the pendency of the mediation and/or a settlement in principle to the Court in the Action as well as potential settlement administrators in connection with obtaining bids. Defendants may, at their sole discretion, disclose the terms of the Settlement to their auditors, affiliates, regulators, and other parties as reasonably necessary.

S.      <u>No Publicity Beyond Notice Procedures</u>. Prior to filing a motion for Preliminary Approval, Class Counsel and/or Plaintiff will not issue press releases or initiate any public statements regarding the Settlement, with the exception of the Class Notices. The Parties may make truthful public statements to the Court as necessary to obtain Preliminary or Final Approval of the Settlement, and Class Counsel will not be prohibited from communicating with any person in the Settlement Class regarding the Action or the Settlement.

## IV.    <u>GENERAL PROVISIONS</u>

A.      <u>Settlement Conditioned Upon Approval</u>.  The Settlement is conditioned upon entry of the Preliminary Approval Order and Final Approval Order without material modification by the Court.  In the event of failure to obtain any of the required provisions of such orders, including, but not limited to, the denial of any motion seeking Preliminary or Final Approval, the Parties will return, without prejudice, to the *status quo ante* as if no Settlement had been negotiated or entered into.  The Settlement and its existence shall be inadmissible to establish any fact relevant to any

alleged liability of the Released Parties for the matters alleged in the Action or for any other purpose.

B.   <u>Evidentiary Preclusion</u>.   Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement:  (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be a waiver of Defendant's right to seek to enforce any arbitration provision in other cases or against persons in the Settlement Class who opt out of the Settlement.  In addition, neither the fact of, nor any documents relating to, Defendant's withdrawal from the Settlement, any failure of the Court to approve the Settlement and/or any objections or interventions may be used as evidence for any purpose whatsoever.  The Released Parties may file the Settlement Agreement, any Order entered regarding the Settlement and/or the judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

C.   <u>No Construction Against Drafter</u>.   This Settlement Agreement will be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter will not apply.

D.   <u>Entire Agreement</u>.   Notwithstanding any separate agreement between Plaintiff and Roquemore in connection with Plaintiff's individual cause of action asserted in the Action, this Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.  This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives and approved by the Court.  The provisions of the Agreement may be waived only in a writing executed by the waiving party.  The

waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver, by that Party or by any other Party, of any other prior or subsequent breach of this Agreement. This Paragraph IV.D does not include any separate agreement between Plaintiff and Roquemore in connection with Plaintiff's individual cause of action asserted in the Action.

      E.    <u>Authority</u>.  Plaintiff and Defendants represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiff and Defendant to all terms of this Agreement.  Any person executing this Agreement in a representative capacity represents and warrants that he or she has done so freely and he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

      F.    <u>No Assignment</u>.  No party to this Agreement has heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, or cause or causes of action disposed of by this Agreement.

      G.    <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees and specifically warrants that he, she or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.  Each Party to this Agreement warrants that he, she, or it is acting upon his, her or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Agreement.

      H.    <u>Agreement Binding on Successors in Interest</u>.  This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the Parties.

I.      Execution In Counterparts.  The Parties may execute this Agreement in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

J.      Severability.  Notwithstanding Fed. R. Civ. P. 23 and corresponding case law, if any part of this Agreement is declared invalid or unenforceable, the remaining terms of the Agreement shall continue to be valid and enforceable.

K.      Notices.  All notices to counsel provided for herein shall be sent by e-mail with a hard copy sent by mail to:

<u>As to Plaintiffs and the Settlement Class:</u>

CONSUMER JUSTICE CENTER, P.A.
Thomas J. Lyons, Jr.
367 Commerce Court
Vadnais Heights, MN 55127
tommy@consumerjusticecenter.com

TARSHISH CODY, PLC
Adam R. Strauss
6337 Penn Ave. S.
Minneapolis, MN 55423
ars@AttorneysInMN.com

<u>As to Wings Financial Credit Union.:</u>

BASSFORD REMELE P.A.
Christopher R. Morris
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
cmorris@bassford.com

<u>As to Roquemore & Roquemore:</u>

Chris Kato
General Counsel
Primeritus Financial Services, Inc.
435 Metroplex Drive
Nashville, TN  37211

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the last date set forth below:

Dated:  June ⎽⎽⎽, 2019

**Michelle Kealy, on behalf of herself and**
**all others similarly situated**

By: _____

      **Michelle Kealy**

**Wings Financial Credit Union:**

                                              Dated:  June _____, 2019

By:       /s/

Its:

**Roquemore & Roquemore:**

                                              Dated:  June _____, 2019

By:       /s/

Its:

**APPROVED AS TO FORM AND**
**CONTENT:**

**CLASS COUNSEL:**

CONSUMER JUSTICE CENTER P.A.          Dated:  June ____, 2019

By:      s/_____

               Thomas J. Lyons, Jr.

TARSHISH CODY, PLC.                 Dated:  June ____, 2019

Michelle Kealy, on behalf of herself and
all others similarly situated

By: _____
       Michelle Kealy


**Wings Financial Credit Union:**

                                              Dated:  June _____, 2019


By:      /s/

Its:


**Roquemore & Roquemore:**

                                              Dated:  June _____, 2019


By:      /s/

Its:


**APPROVED AS TO FORM AND
CONTENT:**

**CLASS COUNSEL:**
CONSUMER JUSTICE CENTER P.A.              Dated:  June _10_, 2019

By:    s/ _____
                 Thomas J. Lyons, Jr.


TARSHISH CODY, PLC.                          Dated:  June 10, 2019

By:      s/
                    Adam R. Strauss


**APPROVED AS TO FORM:**

**Wings Financial Credit Union COUNSEL:**                    Dated:  June ____, 2019
BASSFORD REMELE, P.A.


By:      s/
                    Christopher R. Morris


**Roquemore COUNSEL:**                    Dated:  June ____, 2019
PARKER DANIELS KIBORT LLC.


By:      s/
                    Andrew D. Parker


26

**Michelle Kealy, on behalf of herself and
all others similarly situated**

By:   _____
       **Michelle Kealy**


**Wings Financial Credit Union:**

Dated:  June _____, 2019


By:   /s/

Its:


**Roquemore & Roquemore:**

Dated:  June _**10**_, 2019


By:   /s/ *Chyphen M. Koto*

Its:   *General Counsel*


**APPROVED AS TO FORM AND
CONTENT:**

**CLASS COUNSEL:**
CONSUMER JUSTICE CENTER P.A.

Dated:  June ___, 2019

By:   s/_____
       Thomas J. Lyons, Jr.


TARSHISH CODY, PLC.

Dated:  June ___, 2019

By:      s/_____
                    Adam R. Strauss

**APPROVED AS TO FORM:**

**Wings Financial Credit Union COUNSEL:**                    Dated:  June _____, 2019
BASSFORD REMELE, P.A.

By:      s/
                    Christopher R. Morris

**Roquemore COUNSEL:**                    Dated:  June _10_, 2019
PARKER DANIELS KIBORT LLC.

By:      s/
                    Andrew D. Parker

By: _s/_____
　　　　　　　Adam R. Strauss


**APPROVED AS TO FORM:**


**Wings Financial Credit Union COUNSEL:**　　　　　　　Dated:  June <u>10</u>, 2019
BASSFORD REMELE, P.A.


By: _s/Christopher R. Morris_
　　　　　　　Christopher R. Morris


**Roquemore COUNSEL:**　　　　　　　Dated:  June ____, 2019
PARKER DANIELS KIBORT LLC.


By: _s/_____
　　　　　　　Andrew D. Parker