### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA
### Civil Case No.: 0:18-cv-01226 (JRT/LIB)

| | |
|---|---|
| Michelle Kealy *f/k/a* Michelle Mamula, *on behalf of herself and all other similarly situated*<br><br>    Plaintiffs,<br><br>    vs.<br><br>Wings Financial Credit Union, Roquemore Holdings LLC *d/b/a* Roquemore & Roquemore, John Doe Repossession Companies 1- 10.,<br><br>    Defendants. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE INCENTIVE AWARD** |

## INTRODUCTION

This Memorandum is submitted in support of Plaintiff Michelle Kealy's ("Plaintiff") Motion for Attorneys' Fees, Costs, and Class Representative Incentive Award following the class action settlement reached in this case[1]. For the reasons mentioned below, Plaintiff respectfully requests the Court's approval of her fees and costs and incentive award for successfully litigating this class action, and that the Court grant her motion in full.

---

[1] Plaintiff is filing this motion now before the end of the opt out and objection deadline (August 30, 2019) in accordance with recent Eighth Circuit precedent. *See Keil v. Lopez*, 862 F.3d 685, 703–05 (8th Cir. 2017).

## BACKGROUND

Plaintiff alleges that March 2015, she entered into a security agreement with Defendant Wings Financial Credit Union ("Wings") for the purchase of a vehicle. *See* (Compl. [ECF. 1] ¶¶ 19-25). By April 2015, Plaintiff began to fall behind on her payment obligations under the loan agreement. (*Id.* ¶ 32). Plaintiff further alleges that she routinely made late, partial, and irregular payments to Wings, which were always accepted by Wings. (*Id.* ¶ 32-35, 42, 49, 56, 57, 59). Indeed, Plaintiff alleges that Wings never insisted upon strict compliance with the payment due date as it had repeatedly and continuously accepted late, partial, and irregular payments from Plaintiff. (*Id*). Plaintiff remained behind throughout the entire agreement. (*Id*). In February 2017, Wings sent a letter to Plaintiff accelerating the full balance of the loan. (*Id.* ¶¶ 53-60). In May 2017, Defendant Roquemore Holdings, LLC ("Roquemore"), on behalf of Wings and at Wings' request, repossessed Plaintiff's vehicle. (*Id.* ¶¶ 100-04). Prior to accelerating the balance of the loan and repossessing Plaintiff's vehicle, Plaintiff alleges that Wings failed to send Plaintiff the required notice under Minnesota law – the "*Cobb*" notice[2]. (*Id.* ¶¶ 32-60, 100-104, 156-170). Without any notice or warning, Wings allegedly changed its course of performance (*i.e., the repeated acceptance of late payments*) and enforced harsh contract

---

[2] A secured party may engage in self-help repossession of a vehicle without judicial process if the consumer is in default. Minn. Stat. § 336.9-609. However, after a creditor has accepted late payments from a consumer, the creditor must notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully enforce its contract remedies. *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980). The strict compliance letter referred to in *Cobb* is also known as a "*Cobb* notice". *Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011). If a creditor fails to send a *Cobb* notice, "repossession is wrongful as a matter of law." *Buzzell*, 802 F. Supp. 2d at 1024.

remedies in violation of Minnesota law. (*Id*).

After researching and investigating Wings' practices, Plaintiff determined that it was Wings' regular policy and practice to accelerate loan balances and repossess vehicles without providing consumers a *Cobb* notice prior to acceleration or repossession. (*Strauss Decl.*, Ex. 2)[3]. As such, Plaintiff recognized other consumers had most likely been similarly victimized and Wings would continue to do so to future consumers unless action was taken. (*Id*). Therefore, as opposed to filing an individual action, Plaintiff brought this matter as class action on behalf of all similarly situated consumers. (ECF. 1 ¶ 1). In other words, Plaintiff did not simply allow Defendants to victimize her, instead Plaintiff decided to stand up and fight for all Minnesota consumers while undertaking substantial risks. (*Id*).

On May 2, 2018, Plaintiff commenced this action alleging that Defendants violated the Minnesota Uniform Commercial Code ("UCC") (Minn. Stat. § 336.9-609) and the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692f(6)) by repossessing her car without providing her with a *Cobb* notice prior to the repossession. (ECF. 1 ¶¶ 32-60, 100-104, 156-170). Specifically, Plaintiff alleges that: (a) Defendants unlawfully repossessed the vehicles belonging to Plaintiff and the class members without the present right to possess any such vehicles; and (b) Defendants accelerated the loan balances for Plaintiff and the class members without the present right to accelerate the loans balances. (*Id*).

---

[3] *See Declaration of Adam R. Strauss in Support of Motion for Attorneys' Fees and Costs and Class Representative Incentive Award*. Attached as Exhibit 2 are counsel's time records. The time records indicate that Plaintiff hired counsel in February 2017 and waited until May 2018 to file the Complaint. *See* (*Strauss Decl.*, Ex. 2); *see also* (*Declaration of Thomas J. Lyons,* Ex. B) (hereinafter "*Lyons Decl.*").

In June 2018, Defendants filed separate Answers denying Plaintiff's allegations that they wrongfully repossessed the vehicles belonging to Plaintiffs and the Class members. *See* (*Wings' Answer* [ECF. 4] ¶¶ 102-112); *see also* (*Roquemore's Answer* [ECF. 6] ¶¶ 156-170). In fact, at all times, Defendants vigorously denied Plaintiff's allegations, disputed the legal issues, and challenged Plaintiff at every turn. *See* (ECF. 4 ¶¶ 23, 27-30, 33, 34, 38, 40,41, 43, 44, 47, 48, 55, 56, 102-112; ECF. 6 ¶¶ 2, 6-10, 12-14, 23, 26-31, 44, 45, 51, 53, 54, 58, 61-108, 156-170); *see also* (*Wings' Statement of the Case* [ECF. 9] at 1-3; *Roquemore's Statement of the Case* [ECF. 10] at 1-3; *Settlement Agreement* [ECF. 23-1] at 1-2; and *Mail Notice* [ECF. 23-2] at 2).

After the August 13, 2018, Pretrial Conference, Plaintiff was able to confirm the practices of Wings and the allegations in the Complaint through in-depth discovery (*including initial disclosures, interrogatories, requests for documents and requests for admissions*). (*Strauss Decl*. ¶¶ 16-18, and Ex. 2). In addition, one deposition was taken by Plaintiff in Dallas, Texas, to confirm the practices of Defendants and the allegations in the Complaint. (*Id*). The parties engaged in several meet and confer conferences in-person, via telephone, and through email correspondence. (*Id*). The meet and confer conferences focused on detailed and complete discovery, Defendants' practices, data and information relating to the putative class, damages, and settlement opportunities. (*Id*). Because the parties were willing to engage in open, honest, and cordial meet and confer conferences – which, the parties did early and often – the parties were able to expeditiously reach an amicable resolution. (*Id*). In addition, Wings has agreed to post-settlement confirmatory discovery. (*Id*. ¶ 32).

On February 13, 2019, after submitting comprehensive and voluminous mediation materials setting forth each side's legal positions, the parties and their counsel participated in a full day private mediation conducted and supervised by Magistrate Judge Boylan (Ret.) (*Id.*, ¶ 18)[4]. Ultimately, the parties and their counsel concluded that settlement on a class-wide basis was in the best interest of the parties and the class members. (ECF. 23 ¶¶ 14-23; ECF. 23-1 at I.A-I.F)[5]. Given plaintiff's counsels' investigation and analysis of the facts and law, and after having weighed the benefits to the settlement class associated with a prompt resolution of the action against the significant cost, risk and delay that continued prosecution of the action could involve, the parties concluded that settlement of the action on the terms set forth in the Agreement was fair, reasonable and adequate, and that the settlement was in the best interest of the settlement class. (*Id*).

On June 10, 2019, the parties executed the Settlement Agreement. (*Id*). The Agreement does not contain any admission of liability, to the contrary, Defendants denied any liability. However, under the Agreement Wings has agreed to pay a total sum of Four Hundred Thousand Dollars ($400,000.00), in a combination of cash and credits, to establish a settlement fund that will be used to pay all settlement costs. (ECF. 23-1 at III.C.1)[6]. As part of the Agreement, Plaintiff is permitted to petition the Court for an award

---

[4] Roquemore participated by phone as needed.

[5] On June 10, 2019, the Declaration of Adam R. Strauss [ECF. 23] was filed in Support of Preliminary Approval of Class Action Settlement. The Settlement Agreement and Release (the "Agreement") was attached as Exhibit 1 [ECF. 23-1] to the Declaration. *See* (ECF. 23-1).

[6] After an account credit of approximately Two Hundred Fifty Dollars ($250.00) is applied to the class members' outstanding deficiency balance with Wings, the remaining portion of the settlement award will be distributed by check. (ECF. 23-1 at III.H.1 & III.I.1).

of attorneys' fees and costs to class counsel provided the amount requested did not exceed one-third (1/3) of the settlement fund. (*Id.* at III.J.2 & III.L). Importantly, Plaintiff's costs are not being separately pursued over and above this percentage but, rather such costs and expenses are being absorbed into the total percentage. (*Id*). Plaintiff is also permitted to move the Court for an incentive award so long as it did not exceed Five Thousand Dollars ($5,000.00). (*Id* at III.J.2 & III.M). The incentive award includes Plaintiff's damages pursuant to the FDCPA and UCC, as well as an incentive fee for her services in this litigation as an award for pursing this action as the class representative on behalf of the settlement class. Finally, the Court should also note the parties have removed even the remote appearance of collusion or impropriety by reaching a settlement with the assistance and supervision of Magistrate Judge Boylan (Ret.) coupled with the fact that there is no "clear-sailing" provision nor any "kicker" provision[7].

By Court Order dated July 1, 2019, this Court granted preliminary approval of this Settlement, appointing Plaintiff to act as Class Representative; and appointing Adam R. Strauss and Thomas J. Lyons, Jr. as Class Counsel. *See* (Preliminary Approval Order [ECF. 29] at 2-4). In support of her petition for attorneys' fees and costs and an incentive award, Plaintiff submits the following.

---

[7] "A clear-sailing provision is one where "the defendants agree[ ] not to oppose the request for attorney fees," *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 243 (8th Cir. 1996), and a kicker provision means that unused assets from the settlement are returned to the defendants instead of being distributed to the class, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)." *In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 979 (8th Circ. 2018). Here, Defendants reserved the right to object to this motion. (ECF. 23-1 at III.L). In addition, any unclaimed funds will go to *cy pres* and not revert back to Defendants. (*Id.* at 9, 15).

I.  **THIS COURT SHOULD APPROVE THE AGREED UPON PAYMENT OF ATTORNEYS' FEES AND COSTS.**

The Agreement permits class counsel to petition this Court for an award of attorneys' fees and costs not to exceed one-third of the settlement fund.  (ECF. 23-1 at III.L).  Courts utilize two main approaches to analyzing a request for attorney fees, the "lodestar" methodology (i.e., the number of hours expended multiplied by a reasonable hourly rate) or the "percentage of the benefit" method.  *See Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (citing *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)).  "It is within the discretion of the district court to choose which method to apply." *Johnston*, 83 F.3d at 246.  A lawyer who recovers a common fund for the benefit of a class is entitled to a reasonable attorney's fee from the fund as a whole.  *See In re Xcel*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)).

As discussed below, the Court should award Plaintiff's attorneys' fees and costs according to the "percentage of the benefit" approach commonly utilized within the District of Minnesota and the Eighth Circuit.

### A. Use of Percentage Method for Awarding Attorneys' Fees in a Common-Fund Case is Well-Established in the Eighth Circuit.

A "*routine calculation*" for determining the proper award for attorneys' fees and costs in common-fund class action settlements is "a percentage of the common fund recovered."  *In re Xcel*, 364 F. Supp. 2d at 991 (emphasis added).  Indeed, "[i]n the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also '*well established*.'  *Id.* (quoting *Petrovic v. Amoco Oil Co.*, 200

F.3d 1140, 1157 (8th Cir. 1999)) (emphasis added). The key issue is whether the desired

percentage is reasonable. *Petrovic*, 200 F.3d at 1157 (citation omitted). Although the

Eighth Circuit has not specifically laid out factors that a district court must consider when

determining whether a percentage of the common fund is reasonable, Magistrate Judge

Leung recently recognized that the District of Minnesota has however relied on the

following factors:

> (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel
> was exposed; (3) the difficulty and novelty of the legal and factual issues of
> the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the
> time and labor involved; (6) the reaction of the class; and (7) the comparison
> between the requested attorney fee percentage and percentages awarded in
> similar cases.

*Khoday v. Symantec Corp.*, No. 11-cv-00180 (JRT/TNL) [ECF 432], 2016 WL 1637039,

*9 (D. Minn. 2016) (citing *Yarrington v. Solvay Pharm., Inc.*, 697 F.Supp.2d 1057, 1062

(D. Minn. 2010); and *In re Xcel*, 364 F. Supp 2d at 993). Many of the factors overlap, and

not all of the individual factors will apply in every case, to that end the district court has

wide discretion in the weight to assign each factor. *Yarrington*, 697 F. Supp. 2d at 1062.

Applying these factors to this matter, result in the following analysis and approval of the

requested fees and costs.

### 1. Benefit to the Class.

As an initial matter, it is important to consider that "unlike most private tort litigants,

[a plaintiff who brings an FDCPA action] seeks to vindicate important . . . rights that cannot

be valued solely in monetary terms." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir.

1995) (quoting *City of Riverside v. Rivera*, 477 U.S. 561 (1986)); *see also e.g. Wal-Mart*

*Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (finding that "damages awards do not reflect fully the public benefit advanced . . ."). To that end, the benefits obtained for the class by Plaintiff and her attorney are beyond mere dollars and cents. Nonetheless, Plaintiff has obtained significant benefits to the class when valued in monetary terms.

More importantly, the same benefits to the class recognized in *Khoday* apply here. The Settlement confers a clear and substantial benefit onto the class[8] – counsel obtained: (1) a Four Hundred Thousand Dollar ($400,000.00) settlement; and (2) the complete removal of the tradeline associated with the repossessed vehicle that has been reported on the class members' credit report. (ECF. 23-1 at III.C). In negotiating the settlement, counsel assessed the probability of success on the merits against the risks of establishing liability and damages and maintaining the class action through trial and appeal. (ECF. 23 ¶¶ 14-23; ECF. 23-1 at pp.1-2). Absent settlement, this case could have continued to generate vigorously disputed issues of law and fact. Defendants would likely have had to continue to contest liability, causation, and damages at trial. Additionally, class members will receive settlement benefits faster than they would receive awards obtained after trial and a likely appeal. By itself, the cash settlement is beneficial to the class, but weighed against the inherent risks of proceeding to trial, this Court can find the $400,000 settlement provides a substantial and immediate benefit to the class. *Khoday*, 2016 WL 1637039, *9; *see also Yarrington*, 697 F. Supp. 2d at 1062-63.

---

[8] Between May 2, 2015 through May 2, 2018, the data available reflects that there were approximately 400 accounts wherein the subject vehicle was repossessed. Within the 400 accounts, there were approximately forty (40) co-borrowers. Therefore, a total of four hundred forty (440) Minnesota consumers with the inclusion of co-borrowers. (ECF.23-1 at II.A.23-24).

### 2.  Counsel's Exposure to Risk.

Plaintiff's counsel took this case on a contingent fee basis, exposing themselves to significant risk, fronting the cost of litigation without any guarantee of eventually prevailing.  (*Strauss Decl*. ¶¶ 15, 20-32); *see also In re Xcel*, 364 F. Supp. 2d at 994 ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."). Counsel faced obstacles with advancing the case to this point. Plaintiff conducted and participated in written discovery, traveled to take depositions, participated in the day-long meditation, and obtained certification of the class and preliminary approval of the settlement.  All of this was undertaken with no assurance of a favorable outcome.  *See In re Xcel*, 364 F. Supp. 2d at 994-95 (risk is an important factor because trial and judicial review are unpredictable and positive results are not guaranteed); *Yarrington*, 697 F. Supp. 2d at 1062-63 (significant risk because "no assurance of a favorable outcome"); *Khoday*, 2016 WL 1637039, *9 (same).

In *Xcel*, *Yarrington*, and *Khoday*, the District of Minnesota found these risks support the reasonableness of the percentage sought.  Plaintiff would respectfully request this Court similarly find that significant risks were undertaken by Plaintiff's counsel and that such risks support the reasonableness of her requested attorney fee and costs award.

### 3.  Complexity of the Factual and Legal Issues.

The legal and factual issues were novel and complex as they involved the

application of both federal and state law with essentially two groups of Plaintiffs[9].  This type of class action (*i.e., wrongful repossession for failure to send consumers a* <u>*Cobb*</u> *notice*) is rare and relatively new.  There have only been *three* previous class actions in the District of Minnesota[10].  *See e.g.*, *Nelson v. BMW Financial Services, NA, LLC, et. al.*, No. 0:15-cv-02661 (SER) [ECF. 70] (D. Minn. May. 2, 2017) (But for settlement, "[the plaintiff] would have filed a certification motion, which would be particularly risky because the putative class was the first of its kind in Minnesota."); *see also Vonasek v. Bank of the West*, *et. al.*, No. 0:16-cv-00342 (DTS) [ECF. 71 at ¶ 2] (D. Minn. Jan. 30, 2018) (Final Approval of the second *Cobb* notice class action in Minnesota); and *see Clark v. JPMorgan Chase Bank, N.A.*, No. 0:17-cv-01069 (SRN/KMM) [ECF. 58] (D. Minn. Dec. 12, 2018) (Order for Final Approval of the third *Cobb* notice class action in Minnesota).

Most importantly, this case was significantly more difficult than both *Nelson* and *Vonasek*.  First, in *Nelson* the defendant (*i.e., the creditor/secured party*) admitted that it **never** sent any *Cobb* notices.  *See e.g.*, Amended Complaint, *Nelson*, No. 0:15-cv-02261 (ADM/SER) [ECF. 22 at 6 ¶ 29] (D. Minn. Sep. 22, 2015) (the defendant bank stated, and Nelson alleged that "Defendant BMW is *not required by law to send any letters or warnings*

---

[9] Although not technically a "sub-class", for purposes of distributing the Award, the Agreement does make a distinction between class members whose claims would fall within the one-year statute of limitations under the FDCPA. (<u>ECF. 23-1</u> at III.H).

[10] The Plaintiffs and class members in the previous *Cobb* notice class actions were also represented by counsel for Plaintiff in this matter.  There is also a fourth *Cobb* notice class action pending, *Hendrickson, et. al. v. Fifth Third Bank, et. al*., No. 0:18-cv-00086 (WMW/TNL).  The Plaintiff and putative class are also represented by counsel for Plaintiff.

*in advance of repossession*.") (emphasis added).  Second, in *Vonasek*, the defendant creditor *admitted* that its notices "*did not include*" the required language under *Cobb* (i.e., "*no additional late payments would be accepted*").  *See e.g.*, *Vonasek*, No. 0:16-cv-00342 (PJS/JSM) [ECF. 41], 2016 WL 10321581, *2 (D. Minn. Nov. 10, 2016) (emphasis added).

Here, Plaintiff alleged that: (1) Wings was sending some letters; (2) Wings was sending different versions of letters that varied in content; (3) the letters did not comply with *Cobb*; (4) Wings was improperly accelerating loan balances; and (5) Wings sent at least one compliant letter[11].  (ECF. 1 ¶¶ 32-60).  In response to these allegations, Defendants made no admissions, asserted that they complied with the law, including *Cobb*, and vigorously contested liability.  *See* (ECF. 4 ¶¶ 23, 27-30, 33, 34, 38, 40,41, 43, 44, 47, 48, 55, 56, 102-112; ECF. 6 ¶¶ 2, 6-10, 12-14, 23, 26-31, 44, 45, 51, 53, 54, 58, 61-108, 156-170); *see also* (ECF. 9 at 1-3; ECF. 10 at 1-3; ECF. 23-1 at 1-2; and ECF. 23-2 at 2).  Despite the contested litigation, Plaintiff's counsel successfully litigated this matter, engaged in discovery, pursued mediation, and reached a favorable result.  Thus, this factor also weighs in favor of the fees requested in this motion.

### 4.    Quality of Representation.

The skill and extensive experience of counsel in complex litigation is relevant in determining fair compensation.  *Khoday*, 2016 WL 1637039 at *10 (citing *In re Xcel*, 364 F. Supp. 2d at 995).  Courts have repeatedly recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration.  *See Yarrington*, 697

---

[11] This case was the first to allege that a *Cobb* notice was required prior to accelerating the entire balance of the loan, as opposed to merely prior to the repossession.

F. Supp. 2d at 1063 (The District of Minnesota found that class counsel's request for fees was supported because the defendant's attorneys consisted of "multiple well-respected and capable defense firms" which "consistently challenged plaintiffs throughout the litigation."). Here, as was also the case in *Khoday*, firms for all the parties have extensive experience and expertise in complex class actions, consumer class actions, and complex consumer litigation. (*Strauss Decl.*, ¶¶ 3-13, and Ex. 1); *see also* (*Lyons Decl.*, ¶¶ 1-4, 11-13, and Ex. A). Plaintiff's counsel advanced and fully protected the interests of all members of the class with their pursuit of this case, standing their ground, and refusing to surrender to defense counsel's skillful and zealous representation of its clients. *See* (ECF. 23 ¶ 14-23; *Strauss Decl.*, ¶¶ 14-21, 27-32, and Ex. 2); *see also* (*Lyons Decl.*, ¶¶ 5-10, and Ex. B). Despite this, Plaintiff's counsel was able to bring this case to a fair and reasonable resolution. The quality of the representation provided by counsel for all parties is another factor that supports the reasonableness of the requested fee.

### 5. Time and Labor Involved.

Plaintiff's counsel has expended significant hours representing the interests of the class since initially being contacted by Plaintiff in February 2017. (*Strauss Decl.* ¶¶ 14-32, and Ex. 2); *see also* (*Lyons Decl.*, ¶¶ 5-9, and Ex. B). Counsel met with Plaintiff on numerous occasions, instructed that she conduct additional investigation to confirm Defendants' illegal collection practices, drafted the pleadings, participated in substantial discovery (*including a deposition in Texas*) and participated in the day-long private mediation. (*Id*). Preparation for mediation alone, including reviewing and analyzing class data took a significant amount of time and resources. (*Id*). Further, drafting and editing

the extensive and complex settlement agreement was significant as was the Motion for Preliminary Approval. (*Id*). Moreover, Plaintiff's counsel expects to dedicate several additional hours (approximately 25) in connection with this settlement, including but not limited to responding to class members' questions, coordination and overseeing of the class administration process for distribution of settlement funds, overseeing the updating of the 400 class members credit reports, overseeing the *cy pre*s award distribution; drafting, preparation for, research for, and attending a Final Approval Hearing, and generally ensuring that all aspects of the settlement are effectuated. (*Id*).

As courts have readily recognized, class counsel should not be penalized with a reduction of fees when undertaking a case on a contingency fee basis after they were subsequently able to prosecute the complex case to a successful result in an efficient manner. *See In re Xcel*, 364 F.Supp.2d at 992. In *Xcel*, District Court Judge Doty noted, *class counsel should be commended* for complying with the Federal Rules of Civil Procedure when they actively worked to ensure the just, speedy and inexpensive determination of the complex class action. *Id*. Judge Doty further noted, "[u]nder Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without undue cost or delay.'" *Id* (quoting Fed. R. Civ. P. 1 advisory committee's notes on 1993 amendments); *see also Perkins v. Gen. Motors Corp.*, 965 F.2d 597, 600 (8th Cir. 1992) (litigants must avoid engaging in tactics that thwart the purpose of moving cases along in a just, speedy and inexpensive manner). In *Xcel*, the Court praised counsel for all parties, stating:

All counsel – both those representing plaintiffs and defendants – conducted this

litigation in an *exemplary manner and fulfilled their obligations under Rule 1*. This is the type of *complex litigation that easily could have dragged on for several more years*. Instead, it had a relatively *short stay* of two and a half years on this court's docket because *counsel litigated the case efficiently and inexpensively*. The lodestar of plaintiffs' counsel could easily have been much higher had not counsel cooperated with one another through the litigation and settlement process. Instead, all plaintiffs' counsel presented a modest lodestar because *they moved the case along efficiently to a just result in a remarkably short period of time*.

*In re Xcel*, 364 F.Supp.2d at 992 (emphasis added).

In this case, counsel for all parties fulfilled their obligations under Rule 1, litigated efficiently and inexpensively, and cooperated with each other to reach a speedy, fair, adequate, and reasonable resolution.   Diverging from the "percentage of the benefit" approach would *effectively penalize* Plaintiff's counsel for successfully, fairly, efficiently, and reasonably reaching a favorable resolution of a complex consumer class action.

As this Court has observed, "[t]he theory behind attorneys' fee awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action." *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003); *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) (noting that "[a] financial incentive is necessary to entice capable attorneys . . . to devote their time to complex, time-consuming cases for which they may never be paid" and that "[t]o make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding") (citations and internal quotations omitted).  Therefore, Plaintiff's counsel respectfully requests this Court adopt the same rationale to this case as the time and effort

expended by Plaintiff's counsel supports the requested award for fees and costs.

### 6.      Reaction to the Class.

As of the date of the filing of this motion, there have been no opt outs by the class members.  (*Strauss Decl.* ¶ 14); *see also* (*Lyons Decl.*, ¶ 5).  Indeed, given the high value of the settlement obtained on behalf of the class, Plaintiff only expects the class to react favorably to the terms of the Agreement, including the negotiated fee percentage.  (ECF. 23 at ¶¶ 14-23)[12].

Throughout this matter Plaintiff worked jointly with her attorneys and negotiated and obtained a class wide settlement of substantial value, procuring a significant benefit to the members of the settlement class.  In addition, any remaining funds will be distributed through a *cy pres* donation further benefiting the public.  Plaintiff and her attorneys worked diligently and efficiently and effectively litigated this case to a global class action settlement after extensive research and investigative work related to Defendants' practices. The parties were able to reach this settlement, successfully avoiding lengthy dispositive motion practice, trial, and appeal, preventing further unnecessary fees and costs.  Perhaps more important, is that as of the date of the filing of this motion, there have been *no* opt outs by the class members.  Therefore, Plaintiff would respectfully request the Court take all of the above into consideration and award her attorneys the negotiated fee and cost award of one-third of the settlement fund.

---

[12] Although no objections are anticipated, Plaintiff would respectfully reserve the right to further respond should any objections be filed.

### 7.    Consistency of the Award in Other Cases.

The Eight Circuit has not set a specific benchmark to analyze the reasonableness of attorneys' fees under the percentage-of-the-fund method. *Yarrington*, 697 F. Supp. 2d at 1064. However, in the District of Minnesota and the Eighth Circuit, courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *In re Xcel*, 364 F. Supp. 2d at 998 (citing, *amongst other cases*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). Therefore, Plaintiff's requested attorneys' fee and cost award in the amount of one-third (1/3) of a common fund is well within realm of other awards in this District. *See e.g.*, *Yarrington,*, 697 F. Supp. 2d at 1065 ("The Court finds . . . the request for fees of 33% of the Settlement amount to be fair, reasonable, and well-supported by authority in this District."); *see also Swenson, et. al. v. WESTconsin Credit Union*, No. 0:16-cv-02344 (MJD/HB) [ECF. 57 at 7] (D. Minn. Feb. 28, 2018) (The District of Minnesota recently awarded 33.3% of the total settlement amount for reasonable attorneys' fees in a *consumer protection* class action).

For example, in *U.S. Bankcorp*, the plaintiffs brought a *consumer protection* class action against U.S. Bank for supplying "confidential customer account information to unaffiliated third parties for marketing purposes." 291 F.3d at 1037-38. The defendant (U.S. Bank) agreed to a common settlement fund in the amount of $3.5 million. *Id.* The common settlement fund was used to pay class counsel $1.25 million in attorneys' fees, along with $40,000 in expenses and $10,000 in incentive awards. *Id.* The "$1.25 million fee award represent[ed] approximately *36%* of the settlement fund." *Id.* at 1038 (emphasis added). The Eighth Circuit approved the $1.25 million fee award (i.e., 36% of the common

fund) stating, "[w]e have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement such as this [citation omitted] and we find no abuse of discretion in the district court's awarding *36%* to class counsel *who obtained significant monetary relief on behalf of the class.*" *Id.* (emphasis added). Just as the District of Minnesota and the Eighth Circuit approved attorneys' fees in the amount of 36% of the common fund, this Court should approve Plaintiff's attorneys' fees and costs in the amount of one-third (1/3) of the settlement fund.

In fact, Plaintiff's requested attorneys' fees and costs are even more warranted in this case than in *U.S. Bancorp*. First, in *U.S. Bancorp*, "over *four million* class members had *received* settlement notices." 291 F.3d at 1037 (emphasis added). Therefore, class members in *U.S. Bancorp* received only a small fraction of the common fund. *Id.* Here, the total class size is approximately 400. (ECF. 23-1 at III.H.1 & III.I.1). Contrary to the small dollar amount received by class members in *U.S. Bancorp*, class members in this case will remarkably receive a minimum of approximately *$610.41* and up to *$660.41* depending on when the class members' vehicle was repossessed. (*Id*). Second, in *U.S. Bancorp* approximately *36,000* class members objected (i.e., 0.9% of the four million persons who received notices). *In re U.S. Bancorp Litig.*, 291 F.3d at 1037. Here, as of the date of this motion, neither the parties nor the settlement administrator has received a single opt-out or objection. (*Strauss* Decl. ¶ 14).

The Eighth Circuit noted in *U.S. Bancorp* that "attorneys must demonstrate that their services were of some benefit to [the] fund or enhanced [the] adversarial process." *Id.* (citing *Petrovic*, 200 F.3d at 1156). As such, if the both the District of Minnesota and the

Eighth Circuit found the 36% attorney fee award to be fair, reasonable, and adequate, it reasonably follows that this Court can easily find the same for Plaintiff's requested attorney fee and cost award for one-third of the fund. In other words, there is no dispute that Plaintiff's attorneys have demonstrated that their services were of a tremendous benefit to the fund and enhanced the adversarial process. Thus, Plaintiff's motion should be granted in its entirety.

What is more, the decision in *U.S. Bancorp* is *not* an outlier, but rather part of long line of *well-established* cases within this District. To be sure, the District of Minnesota has routinely award similar percentages in common fund class actions. *See. e.g.*, *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases demonstrating that this district routinely approved fee awards of 33 percent); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017 ) (The Eighth Circuit approved an attorneys' fees award of "one-third of the total settlement fund" and "*38%* of the net settlement fund". The Eighth Circuit found that 38% "is only 2% higher than the highest percentage we have approved previously." Finally, the court further noted, "[a]lthough *38%* is on the high end of the typical range, we cannot say that it is unreasonable when compared to other awards within this circuit.") (emphasis added) (citing *In re U.S. Bancorp Litig.*, 291 F.3d at 1038; and *In re Xcel*, 364 F. Supp. 2d at 998); *see also EEOC v. Fairbault Foods*, Inc., No. 0:07-cv-03976 (RHK/AJB), 2008 WL 879999, at *4 (D. Minn. Mar. 28, 2008) (fees and costs totaling approximately 36% of the combined settlement funds was "reasonable and appropriate given the significant financial recovery obtained in these case"); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 0:02-cv-03780 (JNE/JJG), 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee

award representing 35.5% percent of the settlement fund); *In re Green Tree Fin. Corp. Stock Litig.*, No. 0:97-cv-2666 (JRT/RLE), No. 0:97-cv-2679 (JRT/RLE), 2003 WL 23335196, at *5 (D. Minn. Dec. 18, 2003) (awarding 33.33% percent of the settlement amount in fees as "fair and reasonable"); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017) (affirming fee award that represented one-third (1/3) of the total settlement fund in class action seeking to recover cost of download insurance services); *Jensen v. Minn. Dep't of Human Servs.*, No. 0:09-cv-1775 (DWF/FLN), 2011 WL 6178845, at *2 (D. Minn. 2011) (one-third (1/3) contingent fee of $2,976,400 settlement was "fair and reasonable considering complexity of the issues, the substantial efforts of Settlement Class Counsel and significant benefits the Settlement affords to the Class[.]"); *In re Employee Ben. Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *7 (D. Minn. Jun. 2, 1993) (approving attorneys' fees of 33.33% from a common fund settlement of $10.7 million as reasonable).

Thus, this Court can easily find an attorneys' fee and cost award of one-third of the settlement fund is reasonable as it is within the range established by other cases in both this District and the Eighth Circuit. Again, keeping in mind that most of these cases were limited to just the attorneys' fees being collected at this percentage. Costs were pursued over and above this amount, which is not true for this case.

Finally, there is no "clear-sailing" provision. Although the parties reached a settlement, Defendants have reserved their right to oppose this Motion. For these reasons, Plaintiff's motion should be granted in its entirety.

## II.   <u>PLAINTIFF IS ENTITLED TO AN INCENTIVE AWARD IN THE AMOUNT OF $5,000</u>

This fair and arm's length Agreement also provided that Plaintiff should receive a $5,000.00 incentive award for operating as class representative and obtaining the result she did.  (<u>ECF. 23-1</u> at III.J.2 & III.M).  No one will dispute that this favorable settlement was secured only after significant joint effort put forth by both Plaintiff and her attorneys. Plaintiff and her counsel worked diligently and efficiently to reach this result on behalf of the class.

Courts in this District routinely grant service awards for named plaintiffs in class actions as incentive awards in order to promote the sound public policy of encouraging individuals to undertake the responsibilities of representative class actions.  *See Khoday*, 2016 WL 1637039 at *12 (citing *Yarrington*, 697 F. Supp. 2d at 1068) (upholding service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs [make] significant efforts on behalf of the Settlement Class and [participate] actively in the litigation"); *Zillhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009). In determining whether a service award is appropriate, courts in the District of Minnesota have considered the "actions plaintiff took to protect class's interests, the degree to which the class has benefitted from those actions, and amount of time and effort plaintiff expended in pursuing litigation." *Zillhaver*, 646 F. Supp. 2d at 1085 (citation and quotation omitted).

Courts from other jurisdictions also readily consider the risk to the class

representative in commencing suit, both financial and otherwise. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). This includes the embarrassment of reducing their circumstances to a publicly filed court record which will be easily accessible for others to view and possible liability for costs or attorney's fees. Here, Plaintiff not only suffered the embarrassment of her vehicle wrongfully repossessed, she then exposed herself to greater embarrassment and shame by commencing this action, reducing these facts to a public record, all for the sake of benefiting the class. Both Defendants also asserted they were entitled to attorneys' fees, costs, and disbursements from Plaintiff. (ECF. 4 at p. 14; ECF. 6 at p. 25). Plaintiff's undaunted persistence in the face of Defendants' threats of reimbursement of their fees and costs should be rewarded as Plaintiff's efforts gained an excellent result for all the class members.

Plaintiff would respectfully request the Court take all of the above into consideration and award her the negotiated incentive fee of $5,000.00. Other Court rulings are consistent with this award. *See e.g., Zilhaver*, 646 F. Supp. 2d at 1085 (awarding two lead plaintiffs $15,000 incentive awards from a common fund settlement); *In re Xcel*, 364 F. Supp. 2d at 1000 (awarding $100,000 collectively to a group of eight lead plaintiffs); *In re Employee Benefit Plans Sec. Lit.*, 1993 WL 330595, at *7 (approving incentive awards of $5,000.00 to each of the three representative plaintiffs from a common fund settlement); *Nelson*, No. 15-cv-02661 (SER) [ECF. 70] ($10,000 to Plaintiff as an incentive award).

As outlined in more detail in the declarations for Mr. Strauss and Mr. Lyons, Plaintiff was fully committed to this litigation and her role as class representative from the outset. Plaintiff dedicated significant time, energy and effort thus far, and has pledged to

continue this commitment until all aspects of the settlement are complete.  *See* (*Strauss Decl*. ¶¶ 27-32; *Kealy Decl*. [ECF. 21] ¶¶ 4-13).  Given the value that the majority of class members are receiving in comparison to what other consumer class actions in this District have settled for in recent years, the proportional increase in the Plaintiff's incentive award is appropriate and reasonable.

## CONCLUSION

Plaintiff respectfully requests that an award of one-third (1/3) of the settlement ($133,333.33)[13] for her attorneys' fees and costs and that a class representative incentive award in the amount of $5,000.00 be incorporated into the Final Approval Order of Class Settlement in this matter.

Dated:  August 9, 2019               **TARSHISH CODY, PLC**

                                                     By:      *s/ Adam R. Strauss*
                                                              Adam R. Strauss (#0390942)
                                                              ars@attorneysinmn.com
                                                              6337 Penn Avenue South
                                                              Minneapolis, Minnesota 55423
                                                              Telephone: (952) 361-5556
                                                              Facsimile: (952) 361-5559

Dated:  August 9, 2019               **CONSUMER JUSTICE CENTER, P.A.**
                                                              Thomas J. Lyons, Jr. (#0249646)
                                                              tommy@consumerjusticecenter.com
                                                              367 Commerce Court
                                                              Vadnais Heights, Minnesota 55127
                                                              Telephone: (651) 770-9707
                                                              Facsimile: (651) 704-0907

                                                     **ATTORNEYS FOR PLAINTIFFS**

---

[13] This amount includes all costs, fees, disbursements, filing fees, service of process fees, deposition costs, travel expenses, and mediation costs (*over $6700 in out of pocket expenses*).